CHRISTINE M. TOBIN-PRESSER (WSBA #27628)
THOMAS A. BUFORD (WSBA # 52969)
SHANE E. CREASON (WSBA #63865)
BUSH KORNFELD LLP
601 UNION STREET, SUITE 4630
SEATTLE, WA 98101
Tel: (206) 292-2110
Email: ctobin@bskd.com; tbuford@bskd.com;
screason@bskd.com

HONORABLE FREDERICK P. CORBIT

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| SPOKANE INDUSTRIES LLC, | Case No. 26-00116-FPC11 |
| Debtor. | DEBTOR'S MOTION (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING POSTPETITION LOAN FACILITY |

Spokane Industries LLC (the "Debtor"), debtor-in-possession in this chapter 11 case (the "Bankruptcy Case"), moves the Court pursuant to sections 105, 361, 362, and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (1) authorizing the Debtor's continued use of cash collateral ("Cash Collateral") in which Pathward, N.A. asserts a security interest through September 27, 2026 (the "Extended Cash Collateral Period") pursuant to the budget (the "Extended Budget") attached as Exhibit A to the accompanying declaration of Patrick Turner (the "Turner Declaration"), (2) authorizing the Debtor to

DEBTOR'S MOTION (I) AUTHORIZING CONTINUED USE
OF CASH COLLATERAL AND GRANTING ADEQUATE
PROTECTION AND (II) APPROVING POST-PETITION
LOAN FACILITY – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2943 je199501q0

26-00116-FPC11    Doc 139    Filed 06/09/26    Entered 06/09/26 17:24:33    Pg 1 of 16

continue granting adequate protection as set forth in the Final Cash Collateral Order, as defined in this Motion, and (3) approving a third unsecured postpetition loan facility.

This Motion is supported by the Turner Declaration filed with the Motion, and by the files and record before the Court.

## I. JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## II. BACKGROUND

The Debtor commenced the above-captioned Chapter 11 case (the "Bankruptcy Case") on January 23, 2026 (the "Petition Date"). The Debtor is a steel foundry in Spokane Valley, Washington, that provides high-quality, high-performance castings for the mining industry. The Debtor sells to customers worldwide and employs more than 100 steelworkers.

The Debtor is operating its businesses and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. A detailed discussion of the Debtor's business operations and events leading to this Chapter 11 case is set forth in the Declaration of Patrick Turner in Support of Debtor's First Day Motions [ECF No. 7].

**A.** **Interim and Final Cash Collateral Orders and Post-Petition Financing**

The Debtor commenced this case to stabilize production and achieve long-term profitability. On January 28, 2026, the Court entered its Interim Order: (1) Authorizing Use of Cash Collateral and Granting Adequate Protection (2) Approving Postpetition

DEBTOR'S MOTION (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING POST-PETITION LOAN FACILITY – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2943 je199501q0

26-00116-FPC11     Doc 139     Filed 06/09/26     Entered 06/09/26 17:24:33     Pg 2 of 16

Loan Facility, and (3) Setting Final Hearing [ECF No. 30] (the "Interim Cash Collateral Order"). The Interim Cash Collateral Order authorized the use of cash collateral in accordance with the Debtor's proposed budget. The Interim Cash Collateral Order set a final hearing on the Debtor's use of cash collateral for February 25, 2026. The Interim Cash Collateral Order also authorized the Debtor to borrow $2,000,000 on a postpetition basis from William and Christine Martz on the terms set forth in the Interim Cash Collateral Order.

On March 3, 2026, the Court entered its Final Order: (1) Authorizing Use of Cash Collateral and Granting Adequate Protection (2) Approving Postpetition Loan Facility, and (3) Setting Final Hearing [ECF No. 87] (the "Final Cash Collateral Order").

The Final Cash Collateral Order authorized the use of cash collateral in accordance with the Debtor's proposed budget through June 30, 2026. The Final Cash Collateral Order further provided for the Debtor's grant of adequate protection to Pathward, N.A. ("Pathward") and several other asserted secured parties (collectively, the "Secured Parties").

On April 7, 2026, the Court entered its Order Approving Post-Petition Loan Facility [ECF No. 122], authorizing the Debtor to borrow up to $1,000,000 from Turner. Thus far, $800,000 has been utilized and the remainder would be utilized in the Extended Cash Collateral Period for budgeted purposes.

**B.    The Debtor's Postpetition Activities and Case Progress**

As described at the inception of the case, funding equipment repairs and building up inventory for use in production are key to the Debtor achieving stable, increased

DEBTOR'S MOTION (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING POST-PETITION LOAN FACILITY – Page 3

2943 je199501q0

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-00116-FPC11    Doc 139    Filed 06/09/26    Entered 06/09/26 17:24:33    Pg 3 of 16

production in order to generate revenue sufficient to repay prepetition creditors under a plan of reorganization. This remains true. The Debtor had anticipated that at this point in the Bankruptcy Case, substantially all necessary equipment improvements would have been implemented, allowing for increased production, and that the income resulting from such increased production would now be stable and predictable. Unfortunately, and as discussed below, several factors have delayed the Debtor's ultimately achievable production and income targets.

There are two general steps required for the Debtor to realize cash from a customer. The first step is melting and pouring metal into molds, with each cycle of melting and pouring referred to as a "heat." The second step involves refining the solidified steel cast part after it is removed from its mold, referred to as finishing. No matter how many heats it pours, the Debtor does not receive payment until the finished part is delivered to its client. Ideally, the Debtor would pour a certain number of heats and finish all of the parts produced by those heats within the same timeline to ensure a stream of income consistent with the funded heats, but that has not occurred during the Bankruptcy Case.

The Debtor's plan of reorganization will require it to finish its scheduled heats in a timely manner to generate the revenue needed to repay its prepetition creditors. The Debtor has undertaken significant repairs to its equipment during the Bankruptcy Case, generally improving its weekly heat capacity, but is still awaiting a critical part needed to complete the redesign of the equipment line that generates 20 percent of its production. While this has delayed sustained increased heats necessary to fund a plan,

DEBTOR'S MOTION (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING POST-PETITION LOAN FACILITY – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2943 je199501q0

26-00116-FPC11    Doc 139    Filed 06/09/26    Entered 06/09/26 17:24:33    Pg 4 of 16

the Debtor's cash shortfall during the Bankruptcy Case and corresponding need for DIP financing can be traced to finishing, not heats.

The following numbers illustrate the issue. Since March, the Debtor has been incurring costs necessary to pour, and has poured, an average of 134,000 pounds of steel per week in the main foundry, representing an average of 24 heats. If finished and delivered to customers, this product would generate approximately $536,000 per week at $4 per pound. Instead, the funded poured steel has accumulated in a backlog. The actual delivered finished product per week has averaged 121,500 pounds, resulting in average revenue of $486,000 per week, or a $50,000 per week shortfall.

The finishing backlog is primarily the result of misalignment between the former manager, who has now been moved to a different role, and the skills needed to maximize finishing. The Debtor has determined that an engineering skill set is required and has increased the offered salary for the position. Consequently, the Debtor is now vetting what it believes to be several viable candidates. In the meantime, Ian Turner, Vice President of Production, has taken over management of finishing and, in two weeks, has achieved 130,000 and 159,000 pounds, respectively, resulting in $650,780 and $515,218 in invoicing from the Debtor's steel foundry division. Another blow to finishing occurred when the vendor responsible for maintaining the Debtor's grinding wheel inventory suddenly advised that it was no longer stocking the grinding wheels necessary for finishing. At the same time, the Debtor's supply was at a low point. This led to further downtime and an increased backlog. While the backlog will translate into future revenue, it does not assist current cash flow.

2943 je199501q0

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## C. Current Stabilization and Contemplated Future Production

The Debtor continues to project that it will be able to propose a feasible plan. However, during the Extended Cash Collateral Period and until it achieves the conditions necessary to attain that production level, the Debtor has adjusted the weekly projected number of heats downward to correspond with its current finishing capacity. As reflected in the Extended Budget, this addresses the previous mismatched labor and material costs associated with poured heats as compared with actual finishing. This adjustment is projected to result in a build up of cash during the Extended Cash Collateral Period. The Debtor will ultimately ramp up heats and finishing correspondingly but there will still be an initial 7-week lag between poured heats and ultimate payment for the finished and delivered product. The cash built up during the Extended Cash Collateral Period will be needed to fund the costs during that lag period.

## D. Purchase of Thermal Reclamation Unit

The Debtor and the Committee are in accord that the Debtor's ability to reduce costs and increase its finishing capacity would be significantly enhanced by the purchase of a thermal reclamation unit. A thermal reclamation unit uses extreme heat to burn off residual resins and binders from used casting sand. This process restores the sand to near-original quality, which would allow the Debtor to reuse a significant portion of its molding and core sand, significantly reducing new sand purchases and waste disposal costs. The unit would result in a superior product at the pouring stage, requiring much less finishing work. Therefore, the Debtor seeks authority to borrow up to $500,000 (the "Third DIP Loan") from Patrick Turner for the purchase and

2943 je199501q0

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

installation of a thermal reclamation unit. The Debtor would provide the Committee 48 hours' notice prior to using proceeds from the Third DIP Loan.

**E.** <u>**Use of Cash Collateral and Adequate Protection**</u>

The Debtor requires continued use of Cash Collateral to maintain uninterrupted operations for the benefit of its creditors and its estate. The Debtor seeks continued use of Cash Collateral in accordance with the Extended Budget. Without continued use of Cash Collateral, the Debtor will be unable to pay its ongoing operating expenses, including payroll, and will thus be unable to continue its business operations. Accordingly, the Debtor seeks entry of an order continuing the use of Cash Collateral on the same terms as the Final Cash Collateral Order through September 27, 2026.

**F.** <u>**Third DIP Loan**</u>

As discussed above, the Debtor further requests authority for the Third DIP Loan to be utilized solely for the purchase and installation of the thermal reclamation unit on the following material terms:

| | |
|---|---|
| **Loan Amount:** | Up to $500,000 |
| **Maturity Date:** | The earlier of: (a) December 31, 2030; (b) confirmation of a Chapter 11 Plan proposed by a party other than the Debtor; (c) sale of all or substantially all of the Debtor's assets; (d) appointment of a Trustee in this Case; or (e) conversion of this case to a case under Chapter 7. |
| **Interest Rate:** | The Federal Judgment Interest Rate. |
| **Payments:** | None for the 12 months following approval; principal and interest repaid in 48 monthly payments thereafter. |
| **Fees:** | None. |
| **Collateral:** | None. |

DEBTOR'S MOTION (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING POST-PETITION LOAN FACILITY – Page 7

2943 je199501q0

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**Advances:**  Single Advance (non-revolving).

**Priority:**  Claim under § 503(b), but subordinate to all other claims entitled to priority under § 507(a)(2).

**Prepayment:**  No penalty

Patrick Turner is an insider of the Debtor and is also a prepetition creditor, but the Third DIP Loan will not affect Patrick Turner's prepetition claim. Additionally, Patrick Turner has agreed to subordinate the Third DIP Loan to all other administrative expenses entitled to priority under § 507(a)(2). Accordingly, the Debtor believes that the terms offered by Patrick Turner are significantly better than those the Debtor could otherwise obtain.

## III.  ARGUMENT AND AUTHORITY

### A.  Use of Cash Collateral

The Debtors' use of property of the estate is governed by section 363 of the Bankruptcy Code. Section 363(c)(1) provides, in pertinent part, that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee [or debtor in possession] may enter into transactions, including the sale or lease of property of the estates, in the ordinary course of business, without notice or hearing, and may use property of the estates in the ordinary course of business without notice or hearing.

11 U.S.C. § 363(c)(1).

The Bankruptcy Code establishes a special requirement, however, regarding the debtor in possession's use of "cash collateral," defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired, in which the estates and an entity other than the estates have an

DEBTOR'S MOTION (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING POST-PETITION LOAN FACILITY – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2943 je199501q0

interest . . . ." 11 U.S.C. § 363(a). Section 363(c)(2) of the Bankruptcy Code permits the debtor in possession to use, sell, or lease cash collateral under subsection (c)(1) only if either of two alternative circumstances exists:

> (A)  each entity that has an interest in such cash collateral consents; or
>
> (B)  the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2). The Debtor requires the use of Cash Collateral to operate, as it holds no unencumbered funds nor sources of unencumbered funds, and the present circumstances require the Debtor to make use of Cash Collateral in order to maintain its ongoing business for the benefit of its estate and creditors. The Debtor has an immediate need to use Cash Collateral to maintain, preserve, and protect its assets and has provided for adequate protection of the Secured Parties' interests in the Cash Collateral, as described above.

For these reasons, the Debtor respectfully requests that the Court authorize the use of Cash Collateral pursuant to the terms of the proposed order filed contemporaneously with this Motion.

**B.  <u>Adequate Protection</u>**

Typically, courts condition the use of cash collateral on the debtor providing adequate protection to the affected secured creditor. *See* 11 U.S.C. § 363(e). When read together, § 361(1), (2), and (3) provide adequate protection, which is intended to protect against "a decrease in the value of such entity's interest in such property." Stated another way, adequate protection protects a secured creditor against diminution in the value of its collateral from the petition date through confirmation. *See In re*

DEBTOR'S MOTION (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING POST-PETITION LOAN FACILITY – Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2943 je199501q0

*Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 377 (1988). Adequate protection payments are not to be used to compensate the creditor for lost interest or to provide lost opportunity costs. *In re Weinstein*, 227 B.R. 284, 296 (9th Cir. BAP 1998) (citing *Timbers of Inwood*, 484 U.S. at 377). Nor is adequate protection meant to guarantee that a creditor will be paid in full. Rather, the court must determine whether the creditor's interests are protected as nearly as possible against the possible risks to that interest. *In re Ernst Home Ctr.*, 209 B.R. 955, 966 (Bankr. W.D. Wash. 1997); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988)).

Here, the proposed adequate protection is sufficient to protect the Secured Parties' interests. As discussed above, the Debtor proposes to continue providing the same adequate protection as under the Final Cash Collateral Order, in exchange for continued use of Cash Collateral through the new proposed Termination Date of September 27, 2026. Specifically, each Secured Party shall be granted a replacement lien in postpetition assets of the same type in which their prepetition lien attached, in the same priority and validity as their prepetition lien, as necessary to secure the diminution in such Secured Party's interest, if any, as a result of the Debtor's use of Cash Collateral.

Further, to the extent of any diminution in value ultimately due to Cash Collateral use not otherwise protected by the replacement lien granted herein, Secured Parties retain their rights under section 507(b) of the Bankruptcy Code. The Debtor will also continue to maintain insurance on its assets in the same form as it existed as of the Petition Date. In sum, the Secured Parties are receiving the same adequate protection

DEBTOR'S MOTION (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING POST-PETITION LOAN FACILITY – Page 10

2943 je199501q0

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

they have enjoyed throughout this Bankruptcy Case in exchange for the Debtor's use of Cash Collateral, and the Debtor is seeking only an extension of that arrangement.

## C.  **Postpetition Financing**

Section 364(b) of the Bankruptcy Code provides that:

> (b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

Here, the Debtor can obtain the required funds through unsecured credit and is not requesting relief under § 364(c) or (d). The terms of the Third DIP Loan are more favorable than those required under § 364(b), as Mr. Turner has agreed to subordinate the Third DIP Loan to all other claims entitled to priority under § 507(a)(2).

The Third DIP Loan is necessary, and the terms are the best available under the circumstances. As set forth in the Turner Declaration, the Debtor requires the Third DIP Loan to fund the purchase and installation of the thermal reclamation unit. That expenditure will, in turn, reduce finishing costs and increase profits. Further, Mr. Turner is the only party willing to extend credit at this time, and he has agreed to do so on terms more favorable than those to which he would otherwise be entitled, by subordinating his administrative claim to all other § 507(a)(2) priority claims, charging no fees, and requiring no collateral. Finally, the Debtor's decision to accept these terms reflects sound business judgment. The Third DIP Loan allows the Debtor to increase efficiency, reduce costs, and increase its profitability, all of which are necessary for a successful reorganization.

DEBTOR'S MOTION (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING POST-PETITION LOAN FACILITY – Page 11

2943 je199501q0

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## D. **Good Faith**

The proposed terms and conditions of the DIP Loan are fair and reasonable and reflect that Mr. Turner is extending credit under the DIP Loan in good faith. In the Ninth Circuit, good faith for § 364(e) is defined by identifying what does not constitute good faith. *See In re Adams Apple*, 829 F.2d 1484, 1490 (9th Cir. 1987). The fact that a DIP lender is an insider is not a per se bar to § 364(e) protection. *In re LATAM Airlines Grp. S.A.*, 620 B.R. 722, 793 (Bankr. S.D.N.Y. 2020) (persuasive authority rejecting argument that insiders are not entitled to a good faith finding under section 364(e)).

The terms of the DIP Loan here are consistent with good faith. There is no evidence of fraud, collusion, or an attempt to take grossly unfair advantage of other creditors. To the contrary, Mr. Turner has agreed to terms more favorable than those to which he is entitled. Indeed, the fact that the DIP Loan provides for more favorable terms than what Mr. Turner is entitled to under § 364(b) is a clear indication that the proposed terms and conditions of the DIP Loan are fair, reasonable, and made in good faith.

Accordingly, the Debtor respectfully requests that the Court authorize the Debtor to obtain postpetition financing pursuant to § 364(b) of the Bankruptcy Code and that Mr. Turner should be accorded the benefits of § 364(e) of the Bankruptcy Code with respect to the DIP Loan.

*[Remainder of page intentionally left blank]*

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2943 je199501q0

## IV. CONCLUSION

Based on the foregoing, the Debtor respectfully requests that the Court enter an order substantially in the form of the proposed order filed contemporaneously with this Motion, (1) authorizing the Debtor's continued use of Cash Collateral, (2) authorizing the Debtor to continue granting adequate protection as set forth in the Final Cash Collateral Order, and (3) approving the Third DIP Loan.

DATED this 9th day of June, 2026.

BUSH KORNFELD LLP

By   /s/ Shane E. Creason
    Christine M. Tobin-Presser, WSBA #27628
    Thomas A. Buford, WSBA #52969
    Shane E. Creason, WSBA #63865
Attorneys for Spokane Industries LLC, Debtor

DEBTOR'S MOTION (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING POST-PETITION LOAN FACILITY – Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2943 je199501q0

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| SPOKANE INDUSTRIES LLC, | Case No. 26-00116-FPC11 |
| Debtor. | [PROPOSED] ORDER (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING POSTPETITION LOAN FACILITY |

This matter came before the Court on the Debtor's Motion (i) Authorizing Continued Use of Cash Collateral and Granting Adequate Protection and (ii) Approving Postpetition Loan Facility [ECF No. ___] (the "Motion")[1], filed by Spokane Industries LLC, the debtor and debtor-in-possession (the "Debtor") in the above-captioned Bankruptcy Case.

The Court, having reviewed the Motion, the Turner Declaration, and record before the Court; and being satisfied that notice of the Motion was sufficient under the circumstances, that no objections to the Motion have been filed or that any objections

---

[1] Capitalized terms not otherwise defined in this Order have the same meanings ascribed in the Motion.

ORDER (I) AUTHORIZING CONTINUED USE OF CASH
COLLATERAL AND GRANTING ADEQUATE
PROTECTION AND (II) APPROVING POSTPETITION
LOAN FACILITY – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2943 je19dv01yy

have been resolved or overruled, and that good cause exists to grant the relief requested. Accordingly, it is

**<u>ORDERED:</u>**

1. The Motion [ECF No. ___] is granted.

2. The Debtor is authorized to continue using Cash Collateral in accordance with the Extended Budget attached as <u>Exhibit A</u> to the Turner Declaration and on the same terms and conditions set forth in the Final Cash Collateral Order, as modified by this Order.

3. The Termination Date set forth in paragraph 8 of the Final Cash Collateral Order is extended from June 30, 2026, to September 27, 2026. All other terms and conditions of the Final Cash Collateral Order remain in full force and effect and apply to the Debtor's continued use of Cash Collateral authorized by this Order.

4. To the extent of any inconsistency between this Order and the Final Cash Collateral Order, this Order shall control.

5. The Debtor is authorized to borrow up to $500,000 from Mr. Turner on the terms of the Third DIP Loan as set forth in the Motion, provided, however, that the Debtor shall provide the Official Unsecured Creditors Committee, through its counsel, 48 hours' notice of any intended use of proceeds of the Third DIP Loan.

6. The Third DIP Loan obligation shall constitute an allowed administrative expense claim under 11 U.S.C. § 503(b)(1), provided, however, that such claim shall be subordinate to all other claims entitled to priority under 11 U.S.C. § 507(a)(2).

7. The Third DIP Loan shall have no effect on Patrick Turner's pre-petition claims against the Debtor or the Second DIP Loan.

ORDER (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING POSTPETITION LOAN FACILITY – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2943 je19dv01yy

26-00116-FPC11   Doc 139   Filed 06/09/26   Entered 06/09/26 17:24:33   Pg 15 of 16

8. This Order shall be binding upon all parties in interest in this case, and upon any trustee or examiner subsequently appointed in this case or in any superseding Chapter 7 case.

9. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

///End of Order///

Presented by:

BUSH KORNFELD LLP

By_____
    Christine M. Tobin-Presser, WSBA #27628
    Thomas A. Buford, WSBA #52969
    Shane E. Creason, WSBA #63865
Attorneys for Spokane Industries LLC, Debtor

ORDER (I) AUTHORIZING CONTINUED USE OF CASH
COLLATERAL AND GRANTING ADEQUATE
PROTECTION AND (II) APPROVING POSTPETITION
LOAN FACILITY – Page 3

2943 je19dv01yy

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104