Laurie M. Thornton, WSBA #35030
Daniel R. Kubitz, WSBA #55512
Davis Leigh, WSBA #58825
Kathryn G.S. Clavere, WSBA #64626
Schwabe, Williamson & Wyatt, P.C.
1420 5th Ave, Suite 3400
Seattle WA 98101
Telephone: 206-622-1711
Facsimile: 206-292-0460

The Honorable Frederick P. Corbit
Chapter 11

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re<br><br>SPOKANE INDUSTRIES, LLC,<br><br>Debtor. | Case No. 26-00116-FPC11<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO APPROVAL OF DISCLOSURE STATEMENT FOR DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION [ECF NO. 197] AND REQUEST FOR CONTINUANCE OF HEARING |

The Official Committee of Unsecured Creditors (the "Committee") objects to approval of the Disclosure Statement for Debtor's First Amended Plan of Reorganization (ECF No. 197, the "Disclosure Statement") and asks that the hearing set for October 13, 2026 be continued and an objection deadline set on the notice the Bankruptcy Rules and this Court's local rules require.

## I. INTRODUCTION

This objection rests on two grounds. The first is notice. The Debtor's First Amended Plan (ECF No. 198, the "Amended Plan") and the Disclosure Statement were docketed at 3:48 and 3:50 p.m. on Friday, October 9, 2026, for a hearing at 10:30 a.m. on Tuesday, October 13, with a federal holiday on Monday.

They are not a mere clean-up of the August plan. They change the treatment of the two largest secured creditors, allow the Spokane Stainless claim at $1,102,499 more than Spokane Stainless itself asserted, move Pathward's balloon payment from month 60 to month 36, and add, for the first time, an alternative under which Class 7 receives no fixed payment at all if the class rejects. Creditors on the Master Mailing List are entitled to 28 days' notice of a hearing on a disclosure statement and of time to object to it. FRBP 2002(b)(1); LBR 3018-1(a). They have had only one business day.

The second is the Disclosure Statement's content. Section 1125 requires information sufficient to allow a Class 7 creditor to make an informed judgment about the Plan, and LBR 3017-1(a) lists the minimum contents of a disclosure statement. The Disclosure Statement says the Plan will be funded "from its ongoing operations" while its own projections pay the 2029 Pathward balloon with an unidentified $2,146,764 "infusion," and it states that its projections' assumptions are attached as Exhibit B, when Exhibit B contains spreadsheets and no written assumptions at all. The Disclosure Statement also says nothing about what the insiders who will own and run the reorganized Debtor will be paid, what becomes of the lien Mr. Patrick Turner recorded 27 days before the petition, or who will pursue the estate's claims against them. It describes the treatment Class 7 receives if the class rejects in a single sentence, and in the one place it addresses the consequence of a vote it says the opposite of what the Plan provides. And it does not tell a Class 7 creditor how large Class 7 is or what percentage of its claim it is projected to receive.

The Committee understands the Debtor's interest in moving quickly, and shares it. But a disclosure statement exists to give creditors sufficient information and sufficient time to use it, and the question for the Court is whether this



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

document, filed a single business day before the hearing, provides either. The Committee asks for the 28 days the Rules provide and the information § 1125 requires.

## II. BACKGROUND

The Debtor filed its petition on January 23, 2026 (the "Petition Date"). The Committee was appointed on March 9, 2026 (ECF No. 95).

The case has been financed by an unsecured $2,000,000 loan from William and Christine Martz (ECF No. 30), an unsecured insider loan from Mr. Patrick Turner of up to $1,000,000 (ECF No. 122), of which the Disclosure Statement reports $800,000 funded, a further facility of up to $500,000 from Mr. Turner (ECF No. 148), and biweekly contributions of $70,000 from Mr. Turner to pay professional fees. Disclosure Statement at 5. Use of Pathward's cash collateral has been extended by six agreed orders since the Final Cash Collateral Order (ECF No. 87), most recently to October 20, 2026 (ECF No. 196), on a budget attached to the first-day declaration filed in January (ECF No. 7).

The Debtor filed its original plan and disclosure statement on August 21, 2026 (ECF Nos. 172, 173), the last day of its extended exclusivity period; the order extending exclusivity requires confirmation by October 20, 2026 (ECF No. 137). On August 24 the Debtor noticed a hearing on the original disclosure statement for September 30, 2026, with objections due September 23 (ECF No. 174, amended at ECF Nos. 177 and 179). On September 23, the objection date set by the August notice, the Committee filed a reservation of rights stating that the parties were in discussion, that the Debtor had indicated it would file amended documents, and that the Committee would respond to the amended documents once filed (ECF No. 189). On September 29, the day before the hearing, the Debtor filed a notice continuing it to October 13, 2026 at 10:30 a.m. (ECF No.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

190). The continuance notice set no new objection deadline, and none has been set for the amended Disclosure Statement. The Committee and the Debtor have discussed Class 7 treatment since the August filing. In those discussions and in correspondence, the Debtor has offered various accounts of its prospects and of steps it expects to improve them. Whatever their merit, none of them is described in the Disclosure Statement, which identifies no change in operations, customers, products, pricing, capacity, or management that would account for the increase in revenue its projections assume, and the Debtor's results during the case, discussed in Part III.B.1, *infra*, do not yet reflect one.

On Friday, October 9, the Debtor filed the Amended Plan, the Disclosure Statement, and redlines showing their changes (ECF No. 199). The Disclosure Statement explains that the amendments were made "in order to ensure that its Plan complies with Bankruptcy Code § 1129(b)(2)(B)(ii)." Disclosure Statement at 6. The material changes, as shown by the Debtor's redline, are these. Class 1 (Pathward) moves from 60 monthly payments of $51,000 with a balloon in month 60 to payments of $51,000, $70,000, and $83,000 in years one through three with a balloon in month 36. Class 2 (Spokane Stainless) moves from a $1,200,000 secured claim paid at $20,000 a month to an allowed claim of $6,375,153 paid $2,800,000 over 61 months, including a $400,000 payment in month 61, with the full allowed amount payable from any sale within 61 months, and a mutual release of each side's "officers, directors, managers, and equity holders." Class 6 (Martz) and Class 9 (insider claims) acquire alternative treatments keyed to Class 7's vote. Class 7 moves from a $1,200,000 "Guaranteed Payment" to a $1,500,000 "Fixed Payment" and a rejection alternative is added under which Class 7 receives no fixed payment, equity contributes $250,000 to the Debtor, and the Class 9 claims are "included in Class 7." Disclosure Statement at 10–16.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

Exhibit B to the Disclosure Statement consists of two projection sets, one for each Class 7 alternative, each a one-page payment schedule and a one-page annual cash flow for 2026 through 2031. No written assumptions accompany them.

## III. ARGUMENT

### A. The hearing should be continued and an objection deadline set on 28 days' notice.

Approval of a disclosure statement in this District is governed by FRBP 3017(a). LBR 3017-1(b). Bankruptcy Rule 3017(a) requires a hearing on notice under Rule 2002(b), and  Rule 2002(b)(1) requires not less than 28 days' notice of the time fixed for filing objections and of the hearing to consider approval of the disclosure statement. Local Bankruptcy Rule 3018-1(a) requires the proponent to give 28 days' notice to the Master Mailing List of the opportunity to object. Whatever notice was given of the August disclosure statement does not serve for a document describing a plan whose economic terms for Classes 1, 2, 6, 7, and 9 have changed, and which adds for Class 7 an alternative treatment that did not exist when notice went out. A Class 7 creditor reading the August disclosure statement would not have known that Class 7's rejection would carry the consequences the Amended Plan now attaches to it. Nor would a creditor reading the amended one: its voting instructions still say that a vote to reject "will not affect the treatment to be accorded a claim" (Disclosure Statement at 21), which was true of the August plan but not true of this one, where the treatment of every Class 7 holder turns on whether the class accepts. The document was not conformed to the plan it describes, and that alone is reason to give creditors the notice the Rules provide before they are asked to rely on it. The only objection deadline set in this case, September 23, 2026, related to the August disclosure



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

statement; the Committee met it with a reservation of rights that anticipated this filing (ECF No. 189), no deadline has been set for the amended Disclosure Statement, and under FRBP 3017(a) an objection may be filed at any time before approval.

The practical point is the same. The Disclosure Statement reached the docket at 3:48 p.m. on the Friday before a Tuesday hearing, with the intervening Monday a federal holiday. No creditor outside the Committee's professionals can have read it. The Committee itself has had one business day with a 34-page disclosure statement, a 21-page plan, and projections it cannot reconcile to the financial reporting the Debtor provides it weekly.

The Committee asks that the hearing be continued to a date not less than 28 days after service of the Disclosure Statement on the Master Mailing List, that an objection deadline be set, and that the Debtor be directed to provide the Committee now with the model underlying Exhibit B and the assumptions on which it was built.

**B. The Disclosure Statement does not contain adequate information.**

Section 1125(a)(1) requires "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan." This District's applicable local rule spells out the minimum: a disclosure statement "shall include, at a minimum, detailed information regarding" twelve subjects, among them current financial information, how the plan is to be executed, a liquidation analysis, management to be retained and their compensation, "[d]etailed financial projections of operations and discussion of underlying assumptions," litigation pending or contemplated, and transactions



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

with insiders. LBR 3017-1(a)(3), (5)–(9), (11). For a Class 7 creditor the questions are concrete: what will I receive, when, from what source, with what likelihood, and what happens if my class votes to reject. The Disclosure Statement does not sufficiently answer any of them, while getting two of them affirmatively wrong. What follows are issues the Committee has been able to identify in the time available; the Committee does not represent that this list is complete, which is itself part of the reason for the request in Part III.A.

**1. The projections contradict the Disclosure Statement's description of how the Plan is funded, and they are not reconciled to the Debtor's own current forecast or its performance in this case.**

The Disclosure Statement's entire statement of the source of plan funding is one sentence: "The Debtor will fund the distributions under the Plan from its ongoing operations." Disclosure Statement at 16. Its Exhibit B1 says otherwise. In 2029 the Plan requires payments of $4,277,164, of which $3,142,764 goes to Pathward: twelve payments of $83,000 and a balloon of $2,146,764. Exhibit B1 projects 2029 net income of $2,455,700 and opening cash of $683,400, a total of $3,139,100, which leaves operations $1,138,064 short. This gap is closed with a line labeled "Cash Flow Payments (Infusions)" in the amount of $2,146,764, exactly the amount of the balloon payment. Disclosure Statement at 30–31 (Ex. B1). Nothing in the Disclosure Statement identifies where that money comes from. If it is a refinancing, the Disclosure Statement must say so and must disclose the terms, the basis for believing a lender will advance $2.1 million to this borrower in 2029, and the debt service a replacement loan would carry into 2030 and 2031, for which the projection has no line: once the balloon is paid, the Class 1 line goes to zero and no payment on any replacement loan appears in



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

2030 or 2031. If it is an owner contribution, the Plan contains no commitment to make it. Either way, the sentence on page 16 is not an accurate description of the Plan.

The 2026 column raises the same question. It shows "Infusions" of $4,467,500, which exceeds the $2,800,000 of DIP borrowing the Disclosure Statement discloses by $1,667,500. The composition is not stated. As discussed below, the Debtor's own current forecast suggests that it includes $710,000 of owner contributions projected for October through December 2026 that the Disclosure Statement does not mention.

Three further points can be read directly from the exhibit. First, on the Debtor's own figures the reorganized company finishes its first year with $88,700 of cash if Class 7 accepts, and $2,600 if Class 7 rejects. Disclosure Statement at 31 (Ex. B1), 34 (Ex. B2). The Disclosure Statement does not say so, and its two-paragraph risk-factor discussion does not mention it. Second, the 2026 column does not foot: beginning cash of $242,400 plus the stated 2026 cash flow of $112,700 is $355,100, and the page shows ending cash of $156,200, a difference of $198,900 that appears in both exhibits with no explanation anywhere in Debtor's filings. Third, the projection treats net income as cash. The Plan permits distributions to equity to pay the members' pass-through income taxes on the Debtor's earnings (Disclosure Statement at 16, 20), and projects net income of $1,284,500 to $3,156,400 a year, yet Exhibit B has no line for those distributions, no line for capital expenditures, and no line for the working capital a 25% increase in revenue would require. The Disclosure Statement states that "the assumptions on which [the Projections] are based, are attached as Exhibit B." Disclosure Statement at 21. But no written assumptions are included, notwithstanding the applicable local rule's requirement of "[d]etailed financial



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

projections of operations and discussion of underlying assumptions." LBR 3017-1(a)(8).

Nor can the projections be reconciled to the Debtor's own forecast. The Committee receives the Debtor's financial advisor's 13-week cash forecast weekly under the insider DIP order. ECF No. 122 ¶ 7. The most recent, dated September 25, 2026, appears to be the source of Exhibit B1's 2026 column: the forecast's January-through-September actual deposits of $16,253,614 plus its October-through-December forecast of $5,620,800 total $21,874,414, within $1,400 of the rounded $21,875,800 on Exhibit B1.[1] Two points follow. First, the fourth-quarter forecast the Debtor is operating on today projects deposits of $432,369 per week. Exhibit B1's 2027 revenue of $27,341,100 is $525,790 per week. The projection therefore assumes a 21.6% increase in weekly revenue beginning January 1, 2027, and the Disclosure Statement does not say what will produce it.

Second, the fourth-quarter forecast reaches year-end 2026 with positive cash only because it includes $710,000 of "Owner Contributions" between October 11 and December 20, 2026. The Disclosure Statement does not mention them, does not say whether they are committed, and does not say whether owner funding is expected to continue after the Effective Date, when the projections call for the 2029 "infusion" of $2,146,764. A creditor deciding whether to rely on a five-year stream of payments from this business is entitled to know whether the business's own current forecast depends on owner money, and on what terms.

---

[1] The Committee refers to the forecast only to the extent needed to show the Disclosure Statement's omissions. The forecast is the Debtor's financial advisor's 13-week cash forecast dated September 25, 2026, delivered to the Committee by the Debtor under paragraph 7 of the order approving the insider DIP loan (ECF No. 122), and the Committee will provide it to the Court at its direction.

The Disclosure Statement is also silent on the Debtor's performance during the case, which is the best evidence of the value of its projections. After nine months in chapter 11, with $2,800,000 drawn (out of $3,500,000 authorized) from post-petition facilities, and with professional fees paid by biweekly owner contributions rather than from operations, the Debtor's cash at July 31, 2026, the end of the most recent period for which a monthly operating report has been filed, was $615,705. (ECF No. 186.) The August report, due September 21, had not been filed when this objection was prepared.

**2. Insider claims, liens, compensation, and management are not disclosed.**

The Disclosure Statement reports that Mr. Turner holds a scheduled claim of $3,119,269 secured by a UCC-1 filed on December 27, 2025, twenty-seven days before the Petition Date (Disclosure Statement at 7), but does not say whether that lien is retained, released, or avoided under the Plan, or who has evaluated the estate's claim to avoid it. The Amended Plan reserves all claims against insiders and assigns them to the reorganized Debtor, which the insiders will control (Amended Plan at 16–17); the Disclosure Statement does not identify those claims, including the 2025 transfers to insiders listed in the Statement of Financial Affairs, or explain how they will be pursued, notwithstanding the required disclosure of "[l]itigation pending or contemplated." LBR 3017-1(a)(9). Section 1129(a)(5) requires disclosure of the identity and affiliations of each individual proposed to serve as a director or officer of the reorganized Debtor, and of the identity and compensation of any insider it will employ; the applicable local rule separately requires disclosure of "[m]anagement to be retained and their compensation" and of "[t]ransactions with insiders." LBR 3017-1(a)(7),



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

(11). The Disclosure Statement contains none of this,[2] and Class 9 is defined as the claims of "Patrick Turner, Alex Turner and/or Patrick Turner [sic]" (Disclosure Statement at 16), without stating their amounts or whether anything has been or will be advanced under the $500,000 facility approved by ECF No. 148.

### 3. The Class 7 rejection alternative is not explained, and the one sentence addressed to the consequence of a vote says the opposite of what the Plan provides.

The Disclosure Statement tells creditors in capital letters: "FAILURE TO VOTE OR A VOTE TO REJECT THE PLAN WILL NOT AFFECT THE TREATMENT TO BE ACCORDED A CLAIM OR INTEREST IF THE PLAN NEVERTHELESS IS CONFIRMED." Disclosure Statement at 21. For Class 7 that is the opposite of what the Plan provides. If Class 7 accepts, each holder shares a $1,500,000 Fixed Payment, the Additional Payment, and an additional $250,000 sale premium if the business is sold and Classes 1 through 5 are paid in full. If Class 7 rejects, the Fixed Payment and the sale premium disappear, Class 7 receives only an amount computed like the Additional Payment, which the Plan says may be nothing ("no distribution will be made or required"), and the Class 9 insider claims, which on the Debtor's schedules include Mr. Turner's claim of $3,119,269, are "included in Class 7" and share whatever that amount is. Disclosure Statement at 7, 14–16. The sentence appears to be a holdover from the August draft. Striking or reversing it would not cure the problem, because an accurate statement of the consequences of Class 7's rejection requires an explanation that the Disclosure Statement does not provide.

---

[2] Insider compensation during the case was fixed by notice in February (ECF No. 58); if it is continuing at those rates under the Plan the Disclosure Statement should say so.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

The Disclosure Statement says the Amended Plan was filed to satisfy § 1129(b)(2)(B)(ii), and then describes the mechanism in a single sentence: if Class 7 rejects, the holder of the Debtor's equity will contribute $250,000 to the Debtor on the Effective Date and will retain its interests. Disclosure Statement at 15–16. Nothing else is said. The Disclosure Statement does not state how $250,000 was arrived at, what the retained interest is worth on the Debtor's own projections, which show net income of $3,156,400 and cash of $3,927,700 in 2031, whether anyone other than the current owners was offered an opportunity to acquire the equity on those or any terms, or the standard the Court will apply.[3] It does not disclose that the $250,000 goes to the Debtor, not to creditors, and that on Exhibit B2 it is consumed within the first year: 2027 cash flow under the rejection alternative is negative $403,600, and the year ends with $2,600. Disclosure Statement at 34 (Ex. B2). Nor does it state in dollars what "included in Class 7" means for the holders already in that class, or show the resulting pro rata effect. A creditor cannot evaluate a plan under which its class's vote selects between two treatments when one of them is described in a sentence and the consequence of the vote is misstated.

**4. The Spokane Stainless compromise is not described or valued.**

Spokane Stainless filed a claim for $5,272,653.57. Disclosure Statement at 7. The Amended Plan allows it at $6,375,153—$1,102,499 more than the claimant asserted—pays $2,800,000 over 60 months, including a $400,000 payment in month 61, pays the full allowed amount from the proceeds of any sale within 61 months ahead of Class 7, and releases, as of the Effective Date, all claims between the Debtor and Spokane Stainless "and each of their respective

[3] The Committee expresses no view on the standard under § 1129(b)(2)(B)(ii) beyond noting that the Disclosure Statement does not describe it. *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999).



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

officers, directors, managers, and equity holders." Disclosure Statement at 11–12. That release runs in two directions: it releases the estate's claims against the sellers of the business, which the liquidation analysis excludes as of "unknown value" (Disclosure Statement at 18), and it releases Spokane Stainless's claims against the Debtor's managers and equity holders, the Turners. The Disclosure Statement does not describe the claims released in either direction, value them, explain why the allowed claim exceeds the claim asserted, or say what, if anything, the Turners give for their release. A compromise embedded in a plan must be disclosed in enough detail for creditors and the Court to evaluate it,[4] and a release running to the Debtor's managers and equity holders is a transaction with insiders that the local rule requires be disclosed. LBR 3017-1(a)(11).

**5. The Disclosure Statement does not say what Class 7 is projected to receive.**

Exhibit A to the Disclosure Statement lists general unsecured claims without a total. No estimate of the Class 7 pool appears anywhere, and no estimated percentage recovery is stated under either alternative. A creditor cannot tell from the document whether $1,500,000 over five years is five cents on the dollar or fifty.

The Additional Payment is described but never quantified. It is paid only from cash and receivables aged 90 days or less above a floor of $4,979,868.75 of "working capital," plus each of: the Fixed Payment then due, other plan payments then due, a tax distribution reserve, and all accounts payable. Disclosure Statement at 14–15. Exhibit B projects cash but not receivables or payables, so the figure cannot be computed from the Disclosure Statement at all. What can be

---

[4] *See Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986) (factors for approval of a compromise).



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

read from Exhibit B is that the projected year-end cash balance never reaches the floor in any year; the highest figure in the six-year projection is $3,927,700, at the end of 2031. Disclosure Statement at 31 (Ex. B1). The Disclosure Statement should state the Debtor's own projection of the Additional Payment for each of the ten payment dates, and it should say in clear terms that under the rejection alternative those projections are the whole of proposed payments to Class 7.

**C. If the Court is inclined to approve the Disclosure Statement, approval should be conditioned.**

If the Court approves the Disclosure Statement over this objection, the Committee asks that approval be conditioned on the following: (1) the supplements identified in Part III.B, *supra*, including the assumptions underlying Exhibit B, the source and terms of the projected 2029 infusion, the owner contributions assumed for 2026, the information required by § 1129(a)(5) and the treatment of the insider lien and the estate's claims against insiders, a corrected voting statement together with a description of the rejection alternative and the basis for the $250,000 figure, a description and valuation of the Spokane Stainless releases, a stated Class 7 pool and estimated recovery under each alternative, and a current liquidation analysis; (2) delivery to the Committee, within 3 business days, of the model underlying Exhibit B; (3) a confirmation schedule that allows the Committee time to retain a financial advisor, which it is evaluating the need for, and to take discovery on feasibility and on the equity-retention alternative; and (4) inclusion of the Committee's position letter in the solicitation package.

## IV. RESERVATION OF RIGHTS

This objection is directed to the adequacy of the Disclosure Statement and to the notice and timing of its consideration. The Committee reserves all



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

objections to confirmation of the Amended Plan, and all rights with respect to the Spokane Stainless compromise, the insider claims and liens, and the estate's claims against insiders and third parties. The Committee further reserves the right to supplement this objection once it has had the time Rule 2002(b) contemplates.

## V. CONCLUSION

The Committee asks that the Court continue the October 13 hearing, set an objection deadline on 28 days' notice to the Master Mailing List, direct the Debtor to provide the Exhibit B model and assumptions, and, at the continued hearing, deny approval of the Disclosure Statement unless and until it is supplemented as described above.

Dated October 12, 2026.

SCHWABE, WILLIAMSON & WYATT, P.C.

By: */s/ Daniel R. Kubitz*

Laurie M. Thornton WSBA # 35030
Email: lthornton@schwabe.com
Daniel R. Kubitz, WSBA #55512
Email: dkubitz@schwabe.com
Davis Leigh, WSBA #58825
Email: dbleigh@schwabe.com
Kathryn G.S. Clavere, WSBA # 64626
Email: kclavere@schwabe.com

*Attorneys for the Official Committee of Unsecured Creditors*



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2026, I caused to be served the foregoing OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO APPROVAL OF DISCLOSURE STATEMENT FOR DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION [ECF NO. 197] AND REQUEST FOR CONTINUANCE OF HEARING on the following parties at the following addresses:

Thomas A. Buford
Shane E. Creason
Christine M. Tobin
Bush Kornfeld LLP
601 Union Street, Suite 5000
Seattle, WA 98101
tbuford@bskd.com
screason@bskd.com
ctobin@bskd.com

*Attorneys for Spokane Industries, LLC, Debtor*

Benjamin Teich
Amy L Lambdin
Office of the United States Trustee
920 W. Riverside Avenue, Room 593
Spokane, WA 99201
Benjamin.teich@usdoj.gov
amy.lambdin@usdoj.gov

*U.S. Trustee*

Sheila R. Schwager
Hawley Troxell Ennis & Hawley, LLP
877 Main Street, Suite 200
P.O. Box 1617
Boise, ID 83702
sschwager@hawleytroxell.com
*Attorney for Creditor Pathward, N.A.*

John S Kaplan
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA 98101
John.kaplan@stoel.com
*Attorney for Creditor OCL Foundry and Abrasive Supply Co.*

Suzanne Daigle
Ragan L Powers
Davis Wright Tremaine LLP
920 Fifth Avenue, Ste 3300
Seattle, WA 98104-1610
suzannedaigle@dwt.com
raganpowers@dwt.com
*Attorneys for Creditor Avista*

Melissa Williams
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Melissa.williams@atg.wa.gov
*Attorney for Creditor Washington State Taxing Agencies*



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

145805\297082\DRK\51907367.2

*Corporation*

David A. Kazemba
Overcast Law Offices-NCW, PLLC
23 S. Wenatchee Ave. Ste. 320
Wenatchee, WA 98801
dkazemba@overcastlaw.com
*Attorney for Creditor Tommer Equipment Company, Inc.*

Bruce K Medeiros
Randall Danskin PS
601 W. 1st Avenue, Suite 800
Spokane, WA 99201
bkm@randalldanskin.com
*Attorney for Creditor Spokane Stainless Technologies Inc.*

Jason M Ayres
Foster Garvey P.C.
121 SW Morrison Street, Suite 1100
Portland, OR 97204-3141
Jason.ayres@foster.com
*Attorney for Creditor PARK SPE, LLC*

Margot D. Seitz
Farleigh Wada Witt
121 SW Morrison, Suite 600
Portland, OR 97204
mseitz@fwwlaw.com
*Attorney for Creditor Northwest Industrial & Foundry Co.*

Trevor R Pincock
Lukins & Annis PS
717 W Sprague Ave, Suite 1600
Spokane, WA 99201
tpincock@lukins.com
*Attorney for Creditor Norco, Inc.*

by:

- ☐ U.S. Postal Service, ordinary first class mail
- ☐ U.S. Postal Service, certified or registered mail, return receipt requested
- ☐ hand delivery
- ☐ facsimile
- ☑ electronic service (via CM/ECF)
- ☐ other (specify) ______________________

and via CM/ECF to all other parties opted in for the same.

*/s/ Daniel R. Kubitz*
Daniel R. Kubitz, WSBA # 55512



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711