**So Ordered.**

**Dated: October 21st, 2026**

**Frederick P. Corbit**
**Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>SPOKANE INDUSTRIES LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-00116<br><br>ORDER APPROVING DISCLOSURE STATEMENT AND SETTING PLAN-RELATED DEADLINES |

This matter comes before the Court upon Debtor's request to approve the form of disclosure statement to accompany its proposed plan of reorganization to be sent to parties-in-interest.

A. On October 13, 2026, the Court held a hearing to consider the Debtor's Disclosure Statement for Debtor's First Amended Plan of Reorganization filed on October 9, 2026, ECF 197, and the objection thereto filed by the Official Unsecured Creditors Committee (the "Committee"). ECF 200.

B. After hearing argument, the Court continued the hearing to October 20, 2026. The Court directed the Debtor and the Committee to file additional documents in the interim.

C. On October 16, 2026, the Debtor filed (a) a revised form of Disclosure Statement for First Amended Plan of Reorganization, including revisions that had been



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

discussed on the record, and (b) a proposed form of letter to accompany the solicitation materials to be sent to unsecured creditors (the "Debtor Proposed Class 7 Letter"). ECF 207.

D. On October 19, 2026, the Committee filed (a) its supplemental objection to the Debtor's revised Disclosure Statement for First Amended Plan of Reorganization, noting the additional revisions it believed were appropriate, and (b) a proposed form of letter proposed to be sent by the Committee to unsecured creditors with respect to the Debtor's disclosure statement and proposed plan of reorganization (the "Committee Proposed Class 7 Letter"). ECF 208 and 212.

E. At the October 20, 2026 hearing, respective counsel for the Debtor and the Committee advised the Court that agreement had been reached as to additional revisions to the Disclosure Statement, which revisions were summarized for the Court.

F. The Court approved the Debtor Proposed Class 7 Letter and, with certain revisions identified on the record, the Committee Proposed Class 7 Letter.

Now, therefore, it is hereby

**ORDERED:**

1. The Disclosure Statement (the "Approved Disclosure Statement") attached hereto as Exhibit A contains adequate information and is approved. A copy of the same Disclosure Statement, reflecting the revisions that were agreed to by the Debtor and the Committee, is attached hereto as Exhibit B.

2. The Debtor is authorized to solicit votes on its proposed plan of reorganization (the "Plan") using the Approved Disclosure Statement and a ballot substantially similar to Official Form B314 ("Ballot"). The Debtor shall include the



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Debtor Proposed Class 7 Letter with Plan solicitation materials sent to the Holders of Class 7 Claims as those terms are defined in the Plan.

3. The Committee is authorized to send the Committee Proposed Class 7 Letter to the Holders of Class 7 Claims as those terms are defined in the Plan, with the revisions identified by the Court.

4. November 20, 2026 is the deadline for submitting written acceptances or rejections of the Plan. Acceptances or rejections shall be made by returning a completed Ballot to the Debtor's attorneys, Christine M. Tobin-Presser and Thomas Buford, at the address shown in Paragraph 8.

5. The Debtor shall file a summary of ballots on or before November 23, 2026.

6. The hearing to consider confirmation of the Plan is scheduled as follows:

Judge: The Honorable Frederick P. Corbit

Place: United States Bankruptcy Court
904 W Riverside Ave #304
Spokane, WA 99201

Date: December 2, 2026

Time: 10:00 a.m.

7. November 25, 2026 is the deadline for filing and serving written objections to the confirmation of the Plan. Unless filed electronically, the original of any written objection should be filed with the Court at the following address:

United States Bankruptcy Court
920 W Riverside Avenue, Room 840
Spokane, WA 99201



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

8. Unless filed electronically, copies of any written objection should be served on all of the following:

Christine M. Tobin-Presser
Thomas A. Buford
601 Union Street, Suite 4630
Seattle, WA 98101

Benjamin Teisch
Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, WA 98101

Laurie Thornton
Schwabe, Williamson & Wyatt
1420 5th Ave., Suite 3400
Seattle, WA 98101

9. The Debtor's preconfirmation report is due November 30, 2026.

//End of Order//

Presented by:

BUSH KORNFELD LLP

By /s/ Christine M. Tobin-Presser
Christine M. Tobin-Presser, WSBA #27628
Attorneys for Spokane Industries LLC

Approved as to Form; Notice of Presentation Waived:

SCHWABE, WILLIAMSON & WYATT

By /s/ Laurie Thornton
Laurie Thornton, WSBA #35030
Daniel R. Kubitz, WSBA #58825
Attorneys for the Unsecured Creditors Committee



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# EXHIBIT A

CHRISTINE M. TOBIN-PRESSER (WSBA #27628)
THOMAS A. BUFORD (WSBA # 52969)
SHANE E. CREASON (WSBA #63865)
BUSH KORNFELD LLP
601 UNION STREET, SUITE 4630
SEATTLE, WA 98101
Tel: (206) 292-2110
Email: ctobin@bskd.com; tbuford@bskd.com;
screason@bskd.com

HONORABLE FREDERICK P. CORBIT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>SPOKANE INDUSTRIES LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-00116<br><br>DISCLOSURE STATEMENT FOR DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION |

IMPORTANT: THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") CONTAINS INFORMATION RELATED TO THE PROPOSED SECOND AMENDED PLAN OF REORGANIZATION WITH RESPECT TO SPOKANE INDUSTRIES LLC (THE "DEBTOR"):

PLEASE READ THIS DOCUMENT WITH CARE. THIS DOCUMENT SUMMARIZES THE TERMS OF THE DEBTOR'S PROPOSED PLAN OF REORGANIZATION. THE DEBTOR MAY CONTINUE TO NEGOTIATE PAYMENT TERMS WITH ITS CREDITORS, AND THE SPECIFIC TREATMENT OF CLAIMS MAY CHANGE AS A RESULT, BUT THE DEBTOR BELIEVES THAT THE PAYMENT TERMS THAT THE DEBTOR WILL ASK THE COURT TO APPROVE WILL NOT BE LESS FAVORABLE THAN THOSE DESCRIBED HEREIN.

TO ALL PARTIES IN INTEREST:



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

On January 23, 2026 (the "Petition Date"), the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is presently acting as a debtor in possession. The Debtor's reorganization case is pending before the above-captioned court.

This Disclosure Statement is submitted by the Debtor and contains information with respect to the Debtor's proposed First Amended Plan of Reorganization (the "Plan"). Pursuant to § 1125 of the Bankruptcy Code, this Disclosure Statement is being distributed to you along with a copy of the proposed Plan to allow you to make an informed decision in exercising your right to accept or reject the proposed Plan. This Disclosure Statement has been approved by order of the Court pursuant to § 1125 of the Bankruptcy Code as containing information of a kind, and in sufficient detail, as far as is reasonably practicable under the circumstances, that would enable a hypothetical reasonable investor to make an informed judgment about the Plan. In the event of inconsistencies between the Plan and the Disclosure Statement, however, the terms of the Plan shall control. The Court's approval of this Disclosure Statement does not constitute an endorsement of the proposed Plan by the Court.

THE ONLY REPRESENTATIONS THAT ARE AUTHORIZED OR THAT MAY BE MADE CONCERNING THE DEBTOR, THE VALUE OF ASSETS, OR THE PLAN ARE CONTAINED IN THIS DISCLOSURE STATEMENT. ANY FINANCIAL INFORMATION CONTAINED HEREIN OR INCORPORATED BY REFERENCE HAS BEEN PREPARED BY THE DEBTOR'S MANAGEMENT AND IS EFFECTIVE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE READER SHOULD NOT INFER OR ASSUME THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF. FINANCIAL INFORMATION, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, IS NECESSARILY BASED UPON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE BY MANAGEMENT, MAY NOT BE REALIZED AND WILL REMAIN SUBJECT TO INHERENT UNCERTAINTIES. THE FINANCIAL INFORMATION HAS NOT BEEN SUBJECTED TO AN AUDIT AND FOR THAT REASON THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACY. HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY REPRESENTED.

The Plan provides for payment to creditors, primarily from the Debtor's operating income over a period of five years. The Debtor urges you to accept the proposed Plan and to promptly return your completed ballot to enable your vote to be counted.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## ARTICLE I.
## DEFINITIONS

Terms used in this Disclosure Statement not specifically defined herein or in the Bankruptcy Code shall be defined as set forth in the Plan that accompanies this Disclosure Statement. In particular, certain capitalized terms shall have the meanings ascribed for such terms in Section II of the Plan.

## ARTICLE II.
## BACKGROUND INFORMATION

### A. Historical Background and Events Leading to Bankruptcy Filing

Spokane Industries LLC was formed in 1952 and has thereafter operated as a foundry, casting metal by melting it into a liquid and pouring it into molds to create wear parts, primarily for the mining and aggregate industries. Since 1966, the Debtor has operated at Building Nos. 1, 2, and 4 of the Spokane Business and Industrial Park in Spokane Valley. The lessor is Park SPE, LLC (the "Park").

In January 2022, Antectic, Inc. ("Antectic") acquired the Debtor. Antectic, in turn, is owned by Lisa Turner (51%) and Patrick Turner (49%). The Turners are the managers of the Debtor. It was the Turners' intent to expand the Debtor's operations to service the mining industry, particularly after recognizing the increase in global copper demand.

In the last four years, the Debtor has experienced a number of major financial setbacks that have led to the need for this reorganization proceeding. The Debtor's equipment proved to be older and far less reliable than had been represented in Antectic's acquisition. Equipment downtime is debilitating for the Debtor. It can severely limit the Debtor's production and result in defective product and waste. The Debtor struggled to obtain maintenance staff equipped to efficiently target issues and prevent costly downtime.

When the Turners acquired the business in early 2022, the Debtor had a substantial backlog of orders resulting from a combination of Covid-19 stockpiling by customers and the Debtor's inability to operate its equipment at full capacity. In the first quarter of 2022 prices for the two primary alloys used by the Debtor in its production skyrocketed by approximately 25-35%. The backlogged orders were fulfilled at original pricing, notwithstanding that the Debtor's own raw material costs



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

had substantially increased. This decimated the Debtor's working capital, a situation from which it has been unable to recover. As customers adjusted to the post-Covid world, orders decreased as preventative ordering practices were no longer necessary. By the first quarter of 2024, ordering had largely returned to a normal pre-Covid level but the Debtor was unable to operate at maximum efficiency due to both its equipment issues and a difficult labor market.

By the end of the second quarter of 2025, the Debtor's operations were improving but on August 17, 2025, a structural beam in the Debtor's primary operating facility collapsed, resulting in a complete production shutdown for five weeks and a $1.48 million financial loss. As of the Petition Date, the Debtor had received a $450,000 advance on its insurance claim.

In April 2025, the FBI contacted Patrick Turner to advise that it had been investigating the Debtor's human resources manager, Tahnya Schafer. The Debtor's subsequent internal investigation documented for the FBI identified $1.068 million that Shafer had fraudulently obtained from the Debtor from 2023 through 2025 through a variety of means. Ms. Schafer was recently convicted and ordered to pay $1,000,000 in restitution to the Debtor but there is no certainty of payment or collectablity. To the extent the Debtor recovers any funds, they would be used in the Debtor's post-confirmation operations.

Due to its cash crisis, the Debtor had nearly 200 vendors holding unpaid claims. In order to operate profitably and achieve and maintain stable production, the Debtor required both a cash infusion in order to undertake equipment repairs and build up a supply of materials to support increased production, and the ability to repay its vendors over time in an orderly manner. The Debtor filed the Bankruptcy Case to enable it to achieve a targeted production and propose a plan to pay creditors over time.

## B. <u>Post-Petition Activity</u>

**1. Appointment of Committee.** The United States Trustee appointed an Official Unsecured Creditors Committee (the "Committee"), consisting of Jon Neill of OCL Foundry & Abrasive Supply Co., Dan Molitor of Tommer Equipment Company, Inc., and Jesse Larson of Northwest Industrial & Foundry Supply. ECF Nos. 95 and 114.

**2. Employment of Professionals.** On February 25, 2026, the Court entered orders approving the employment of Bush Kornfeld LLP and Turning Pointe, LLC,



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104



26-00116-FPC11 Doc 219 Filed 10/21/26 Entered 10/21/26 12:59:31 Pg 9 of 54

respectively, as bankruptcy counsel and financial advisors to the Debtor. ECF Nos. 78 and 79. On March 31, 2026, the Court approved the employment of Schwabe, Williamson & Wyatt, P.C. as counsel for the Committee. ECF No. 119. On February 25, 2026, the Court entered an Order Establishing Procedures for Interim Payment of Fees and Costs to Professionals. ECF No. 80.

3. **Bank Accounts.** On January 28, 2026, the Court entered an order authorizing the Debtor to continue using its prepetition bank accounts. ECF No. 27.

4. **Payment of Prepetition Wages.** On January 28, 2026, the Court entered an order authorizing the Debtor to pay outstanding prepetition wages and continue to pay for employee benefits and related expenses in the ordinary course.

5. **Adequate Assurance to Utilities.** On January 28, 2026, the Court entered an order authorizing the Debtor's proposed adequate assurance to utility providers on an interim basis. ECF No. 67. On March 12, 2026, the Court entered an order containing provisions specific to utility provider Avista Corporation as agreed to between the Debtor and Avista. ECF No. 103.

6. **Cash Collateral Usage.** On January 28, 2026, the Court entered an interim order authorizing the Debtor to continue using Pathward's cash collateral and approving adequate protection in favor of Pathward. ECF No. 30. The Debtor and Pathward agreed to a number of subsequent extensions of cash collateral usage, through September 8, 2026 as of the date of this Disclosure Statement. ECF No. 161.

7. **Post-Petition Financing.**

a. **Non-Insider DIP Loan.** On January 28, 2026, the Court entered an order authorizing the Debtor to obtain a post-petition loan in the principal amount of $2,000,000 from William and Christine Martz on an unsecured, administrative priority basis, with interest to accrue at the Federal Judgment Rate (the "Non-Insider DIP Loan"). ECF No. 30.

b. **Insider DIP Loan.** On April 7, 2026, the Court entered an order authorizing the Debtor to borrow up to $1,000,000 from Patrick Turner on an unsecured basis with priority under Bankruptcy Code § 503(b)(1), but subordinate to claims entitled to priority under Bankruptcy Code § 507(a)(2), and with interest to accrue at the Federal Judgment Rate (the "Insider DIP Loan"). ECF No. 122. Mr. Turner funded $800,000 of the $1,000,000 and has additionally provided biweekly capital contributions of $70,000 to fund the payment of post-petition Professional fees and costs.

8. **Claims Bar Date.** The Court set a claims bar date of April 3, 2026 for non-governmental claims and July 22, 2026 for governmental claims. ECF No. 13.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**9. Insider Compensation.** On February 4, 2026, the Debtor filed a Notice of Intent to Compensate Insiders, setting forth the four insiders employed by the Debtor, Patrick Turner, Lisa Turner, Alex Turner and Ian Turner, each of their roles, and the compensation intended to be paid to each by the Debtor. ECF 58.

**10. Lease Assumption/Rejection and Plan Filing Deadlines.** On May 27, 2026, the Court entered an order extending the deadlines for the Debtor to file and confirm a plan of reorganization to August 21, 2026 and October 20, 2026, respectively, and the deadline for the Debtor to assume non-residential real property leases to August 21, 2026. ECF No. 137. Park SPE LLC (the "Park") agreed to entry of an order extending the deadline for the Debtor to assume or reject its real property lease to November 25, 2026. ECF No. 158.

**11. Filing of Initial Disclosure Statement and Plan.** On August 21, 2026 the Debtor filed a Disclosure Statement and Plan of Reorganization, premised on the assumption that it would be able to negotiate agreed treatment of unsecured claims with the Committee, notwithstanding its inability to pay such claims in full. To date, the parties have been unable to agree on terms and, in order to ensure that its Plan complies with Bankruptcy Code § 1129(b)(2)(B)(ii), the Debtor has amended its plan to provide for equity to provide a new value contribution.

## ARTICLE III.
## FINANCIAL INFORMATION

### A. Debtor's Assets

On January 23, 2026, the Debtor filed its schedules of assets and liabilities (the "Schedules") and its Statement of Financial Affairs (ECF 1). Schedules A/B reflect the following assets:

| Asset | Scheduled Value |
|---|---:|
| Checking account | $39,320.74 |
| Accounts receivable < 90 Days | $2,766,915.00 |
| Accounts receivable >90 Days | $49,156.15 |
| Inventory – raw materials | $455,696.82 |
| Inventory – work in progress | $491,690.25 |
| Inventory – finished goods | $1,310,822.38 |



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

| Asset | Scheduled Value |
|---|---|
| Manufacturing equipment and office equipment (tax assessed value)[1] | $4,768,477.00 |
| 8 patents | Unknown |
| Claims against sellers of Debtor's business | Unknown |

## B. Debtor's Liabilities

The following discussion represents the Debtor's current understanding of the prepetition claims asserted against it. The Debtor reserves the right, upon notice, to dispute any of the claims.

### 1. Asserted 503(b)(9) Claims

a. **Fastenal.** Fastenal filed a proof of claim (No. 3) asserting a claim entitled to priority under Bankruptcy Code § 503(b)(9) for goods delivered within 20 days of the Petition Date (a "503(b)(9) Claim") in the amount of $23,363.01, and a general unsecured claim in the amount of $71,599.63.

b. **OCL Foundry & Abrasive Supply.** OCL filed proof of claim (No. 54) asserting a 503(b)(9) claim in the amount of $35,843.34 and a general unsecured claim in the amount of $593,781.69.

### 2. Asserted Secured Claims

#### a. Claims Asserted to be Secured by All Personal Property

(1) **Pathward.** Pathward filed a proof of claim (No. 47) asserting a claim as of the Petition Date in the amount of $3,738,064.16, secured by a lien against the Debtor's personal property pursuant to a UCC-1 financing statement no. 202504456523 filed with the Washington Department of Licensing (the "DOL") on February 13, 2025.

(2) **Spokane Stainless Technologies, Inc. ("Spokane Stainless").** Spokane Stainless filed a proof of claim (No. 55) asserting a claim in the amount of $5,272,653.57 for the unpaid purchase price in connection with the Turners' acquisition of the Debtor, secured by a UCC-1 financing statement no. 202507849667

[1] In 2021, in connection with Antectic's acquisition of the Debtor, JG Appraisal Services, LLC performed an appraisal of the Debtor's machinery and equipment concluding a fair value of $2,707,550 as of November 4, 2021. The Debtor's equipment has not substantially changed since that date.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

identifying certain personal property of the Debtor (the “Class 2 Collateral”) filed with the DOL on February 13, 2025.

**(3) Patrick Turner.** The Debtor scheduled a claim in favor of Patrick Turner in the amount of $3,119,269 with respect to prepetition amounts loaned to the Debtor. A UCC-1 financing statement, filing no. 202534184076, was filed with the DOL on December 27, 2025 to secure the obligation. While the filing may be avoidable pursuant to Bankruptcy Code § 547(a), the underlying claim, if Allowed, would remain a General Unsecured Claim. Because the Plan treats the Claim as a General Unsecured Claim, the Debtor does not intend to take any action with respect to the UCC-1 filing.

### b. Claims Asserted to be Secured by Specific Equipment

**(1) CNC Associates.** The Debtor scheduled a claim in favor of CNC in the amount of $42,677.92. CNC filed a proof of claim (No. 32) asserting a secured claim in the amount of $287,563.42. CNC filed UCC-1 financing statement filing numbers 202412201642 with the DOL on May 1, 2024 identifying a Haas Machining Center as collateral and UCC-1 financing statement no. 202412303278 on May 2, 2024 identifying Haas Vertical Machining Center and a Haas Rotary Table as collateral. The identified collateral in both financing statements is referred to collectively herein as the “CNC Collateral.”

**(2) Dell Financial Services, L.L.C. (“DFS”).** The Debtor scheduled a claim in favor of DFS in the amount of $49,056.81 representing its calculation of the amount owed to DFS as of the Petition Date pursuant to a prepetition agreement entered into between the parties and as to which DFS filed a UCC-1 financing statement no. 201406984103 with the DOL on March 10, 2014 identifying financed computer-related equipment as its collateral (the “DFS Collateral”). DFS filed a proof of claim (No. 48) asserting a secured claim in the amount of $140,179.82 purportedly representing the remaining obligations of the Debtor.

**(3) Marlin Leasing Corp. (“Marlin”).** The Debtor scheduled a claim in favor of Marlin in the amount of $110,432.25 representing its calculation of the amount owing for the Debtor’s lease of a 3D printer (the “Marlin Collateral”) as of the Petition Date, as to which Marlin filed a UCC-1 financing statement no. 202327243027 with the DOL on September 29, 2023. Marlin filed a proof of claim (No. 11) asserting a total claim of $424,946.25, secured by collateral with an asserted value of $170,450.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**c. Other Asserted Collateral**

**(1) First Insurance Funding ("First Insurance").** First Insurance filed a proof of claim (No. 56) asserting a claim in the amount of $277,642.40, secured by the Debtor's insurance policies and premiums financed by First Insurance.

**3. Asserted Priority Claims**

**a. Washington State Department of Labor & Industries ("Wash L&I").** Wash L&I filed a proof of claim (No. 1) asserting a priority claim in the amount of $224,458.43, and a general unsecured claim in the amount of $25,506.04.

**b. Washington State Department of Revenue ("Wash DOR").** Wash DOR filed a proof of claim (No. 20) asserting a priority claim in the amount of $34,025.85 and a general unsecured claim in the amount of $949.97.

**c. Internal Revenue Service ("IRS").** The IRS filed a proof of claim (No. 22) asserting a priority claim in the amount of $43,603.81 and a general unsecured claim in the amount of $26,707.30.

**d. Spokane County Treasurer ("Treasurer").** The Treasurer filed a proof of claim (No. 27) asserting a priority claim in the amount of $242,193.67.

**4. Non-Priority General Unsecured Claims**

Exhibit A to this Disclosure Statement sets forth each of the general unsecured claims scheduled by the Debtor as well as all proofs of claim filed by claimants asserting general unsecured claims. Exhibit A does not constitute a motion to allow such claims and does not represent an agreement by the Debtor to the claim amounts, as to which the Debtor reserves its right to object.

## C. The Debtor's Equity

Antectic is the 100% member of the Debtor. Patrick Turner (49%) and Lisa Turner (51%) are the shareholders of Antectic.

## ARTICLE IV.
## PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING TREATMENT OF EACH CLASS UNDER THE PLAN



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

The treatment of all Allowed Claims and Allowed Interests shall be as follows:

## A. Classification of Claims

The Plan establishes 9 Classes of Claims and one class of Interests, and certain other Claims are Unclassified Claims pursuant to applicable provisions of the Bankruptcy Code. If the Plan is confirmed by the Court and becomes effective, the class into which each Allowed Claim and Allowed Interest fits will determine the manner in which such claim or interest will be treated. The Classes defined in the proposed Plan are summarized below. Parties in interest are urged to review the Plan carefully, as the Plan will govern the treatment of and payment terms related to each Class.

## B. Unclassified Claims

### a. Administrative Expense Claims

As defined in the Plan, Administrative Expense Claims are Allowed Claims for costs or expenses of the Chapter 11 Case that are allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code. Claims incurred in the ordinary course of the Debtor's business following the Petition Date shall be paid in the ordinary course of business in accordance with the terms and conditions of the relevant agreements governing such obligations from the cash generated from the Debtor's operations. Allowed Priority Claims under Bankruptcy Code § 503(b)(9) and Claims for professional fees and expenses shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim, unless the Holder of such Claim agrees to alternative treatment.

### b. Priority Tax Claims

As defined under the Plan, Priority Tax Claims are Allowed Claims of Taxing Agencies that are entitled to priority in accordance with section 507(a)(8) of the Bankruptcy Code. Priority Tax Claims include the principal portion of the applicable tax and interest accrued thereon through the Effective Date but do not include any penalties. Priority Tax Claims shall be paid in full within 60 months of the Petition Date through monthly payments commencing on the fifth day of the first month following the Effective Date and continuing for the number of months that is equal to 60 minus the number of months that have elapsed from the Petition Date to the Effective Date.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## C. Classified Claims and Interests

### 1. Class 1: Pathward Secured Claim

**Impaired.** Class 1 consists of the Allowed Secured Claim of Pathward (the "Class 1 Claim"). The Class 1 Claim will be paid as follows:

a. Beginning on the fifth day of the first month following the Effective Date, the Debtor will make monthly principal and interest payments of $51,000 for twelve months. Thereafter, the Debtor will make monthly principal and interest payments of $70,000 for the next twelve months (months 13-24 following the Effective Date). Thereafter, the Debtor will make monthly principal and interest payments of $83,000 for the next twelve months (months 25-36 following the Effective Date).

b. Interest shall accrue on the unpaid portion of the Class 1 Claim at the rate of Prime plus 2% per annum (the "Class 1 Interest Rate").

c. The Debtor shall pay the remaining amount owing on the Class 1 Claim on or before the fifth day of the 36th month following the Effective Date (the "Class 1 Maturity Date").

d. The Holder of the Class 1 Claim shall be secured in the Class 1 Collateral.

### 2. Class 2: Spokane Stainless Claim

**Impaired.** Class 2 consists of the Claim of Spokane Stainless (the "Class 2 Claim"), which shall be treated as follows:

Spokane Stainless shall hold an Allowed Secured Claim in the amount of $6,375,153 (the "Class 2 Full Secured Claim"), subject to the following:

a. **Monthly Payments.** Beginning on the fifth day of the first month following the Effective Date, the Debtor will make monthly payments of $20,000 for twelve months. Thereafter, the Debtor will make monthly payments of $30,000 for the next 12 months (months 13-24 following the Effective Date). Thereafter, the Debtor will make monthly payments of $50,000 for the next 36 months (months 25-60 following the Effective Date). On or before the fifth day of the 61st month following the Effective Date (the "Class 2 Maturity Date"), the Debtor will make a lump sum payment of $400,000. The payments described in this Section IV.C.2.a are collectively



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

referred to as the "Class 2 Discounted Payment." If the Debtor fails to make any of the payments described in this section when due, and if the Debtor further fails to make such payment within 10 days of written notice of the delinquency, Spokane Stainless shall be entitled to enforce its rights under its pre-petition agreements with Spokane Industries and/or other applicable law, including enforcing its rights against the Class 2 Collateral, in order to collect the remaining unpaid Class 2 Full Secured Claim.

**b. Collateral.** Spokane Stainless shall retain all rights under its prepetition agreements with the Debtor and will retain its security interest in the Class 2 Collateral to secure payment of the Class 2 Full Secured Claim, provided, however, that if no Plan Period Sale occurs and the Debtor makes the Class 2 Discounted Payment in accordance with the terms of Section IV.C.2.a of the Plan, Spokane Stainless shall release, and be deemed to have released, its security interest in the Class 2 Collateral on the Class 2 Maturity Date. Notwithstanding the foregoing, Spokane Stainless shall take any actions to ensure subordination of its security interest to any lender of the Debtor in connection with satisfaction of the Class 1 Claim, provided, however, that Spokane Stainless shall not be required to subordinate to an amount greater than the amount of the Class 1 Claim.

**c. Satisfaction of Class 2 Claim.** Upon the Debtor's payment in full of the Class 2 Discounted Payment in accordance with Section IV.C.2.a. of the Plan, totaling $2,800,000, and provided that no Plan Period Sale occurs, the unpaid remaining balance of the Class 2 Claim shall be, and shall be deemed, satisfied in full.

**d. Sale of the Company During Plan Period.** If, during the Plan Period, either (i) the Interests in the Reorganized Debtor, or (ii) substantially all of the Reorganized Debtor's assets, are sold or transferred (a "Plan Period Sale"), and after full satisfaction of the Class 1 Claim, the net proceeds of the Plan Period Sale shall be paid to Spokane Stainless and applied first to fully satisfy any unpaid balance of the Class 2 Discounted Payment and then to the remaining amount of the balance of the Class 2 Full Secured Claim, less the Class 2 Discounted Payment.

**e. Mutual Release.** As of the Effective Date, the Debtor, on the one hand, and Spokane Stainless, on the other hand, and each of their respective officers, directors, managers, and equity holders, including, in the case of the Debtor, Antectic, Patrick Turner, and Lisa Turner, shall release, and shall be deemed to have released, one another from any and all claims that existed as of the Effective Date, including the claims held by the Debtor identified in Section III.A of the Disclosure Statement as



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

"claims against the sellers of its business" (the "Class 2 Mutual Release"). Notwithstanding the foregoing, the Class 2 Mutual Release shall not release any party with respect to claims arising from its failure to comply with its obligations under the Plan and shall specifically not be deemed a release of the Debtor's obligations to Spokane Stainless as described in Section IV.C.2 of the Plan and/or any claim by Spokane Stainless to enforce its rights with respect to the treatment of its Class 2 Claim as provided in the Plan.

**3. Class 3: CNC Claim.**

**Impaired.** Class 3 consists of the Claim of CNC secured by the CNC Collateral (the "Class 3 Claim"). The Class 3 Claim shall be an Allowed Secured Claim in the amount of $287,563.42. The Debtor shall pay the Class 3 Claim in 60 monthly payments commencing on the fifth day of the first month following the Effective Date and made on or before the fifth of each month thereafter. The first 59 payments shall be in the amount of $4,792.72 and the sixtieth and final payment shall be in the amount of $4,792.94. Upon receipt of the first payment, CNC shall provide any and all access codes necessary for the Debtor's operation of the CNC Collateral.

**4. Class 4: DFS Claim**

**Impaired.** Class 4 consists of the Claim asserted by DFS. DFS shall hold an Allowed Claim in the amount of $140,179.82 (the "Class 4 Claim"). The Class 4 Claim shall continue to be secured by DFS' lien against the DFS Collateral. The Debtor shall pay DFS a total of $56,000 (the "Committed Payment Amount") over the twelve-month period commencing on the fifth day of the first month following the Effective Date. To the extent that the Debtor pays DFS the full Committed Payment Amount by or before the fifth day of the twelfth month following the Effective Date, or such later date to which the Debtor and DFS may agree (the "Class 4 Final Payment Date"), the Class 4 Claim shall be deemed fully satisfied. If (a) the Debtor fails to fully pay the Committed Payment Amount by the Class 4 Final Payment Date, or (b) the Bankruptcy Case is converted or dismissed prior to the Debtor's payment of the Committed Payment Amount, DFS shall be entitled to immediate return of the DFS Collateral, and shall continue to hold a claim for the Committed Payment Amount, less the value of the returned DFS Collateral, and less any payments made by the Debtor prior to such conversion or dismissal.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

5. **<u>Class 5</u>: Marlin Claim.**

**Impaired.** Class 5 consists of the Allowed Claim of Marlin (the "Class 5 Claim"). The Debtor shall have a period of six months from the Effective Date to sell the Marlin Collateral and remit the proceeds thereof, net of any costs of sale (the "Net Marlin Sale Proceeds"), to Marlin and Marlin shall hold a Class 7 Claim for the difference between the Class 5 Claim and the Net Marlin Sale Proceeds. Alternatively, upon Marlin's written election, which election must be made within 15 days of the Effective Date, the Debtor will make the Marlin Collateral available to Marlin and Marlin shall liquidate the Marlin Collateral and reduce the Class 5 Claim by the Net Marlin Sale Proceeds of such liquidation. In either case, the Class 5 Claim, so reduced, shall be treated as a Class 7 Claim.

6. **<u>Class 6</u>: Non-Insider DIP Loan.**

**Impaired.** Class 6 consists of the Administrative Claim relating to the Non-Insider DIP Loan (the "Class 6 Claim").

a. **Class 7 Acceptance.** In the event Class 7 accepts the Plan, beginning on the fifth day of the first month following the Effective Date, the Holder of the Class 6 Claim shall receive monthly interest-only payments at the Federal Judgment Rate for sixty months, with the outstanding balance of the Class 6 Claim due and payable on the fifth day of the sixty-first month following the Effective Date (the "Class 6 Maturity Date").

b. **Class 7 Rejection.** In the event Class 7 rejects the Plan, beginning on the fifth day of January, 2027, the Holder of the Class 6 Claim shall receive monthly principal and interest payments of $45,600 for 48 months.

7. **<u>Class 7</u>: Allowed Unsecured Claims.**

**Impaired.** Class 7 consists of Allowed General Unsecured Claims (each, a "Class 7 Claim"). Depending upon whether Class 7 accepts or rejects the Plan, Holders of Class 7 Claims shall be treated as follows:



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**a. Class 7 Acceptance.** In the event Class 7 accepts the Plan, the treatment of Class 7 shall be as follows:

(1) Each Holder of a Class 7 Claim shall be entitled to its Pro Rata share of $1,500,000 (the "Class 7 Fixed Payment"), which shall be paid as follows:

(a) Calendar Year 2027. On each of February 28, 2027 and August 31, 2027, the Debtor shall pay $60,000 to the Holders of the Class 7 Claims.

(b) Calendar Year 2028. On each of February 28, 2028 and August 31, 2028, the Debtor shall pay $100,000 to the Holders of the Class 7 Claims.

(c) Calendar Year 2029. On each of February 28, 2029 and August 31, 2029, the Debtor shall pay $135,000 to the Holders of the Class 7 Claims.

(d) Calendar Year 2030. On each of February 28, 2030 and August 31, 2030, the Debtor shall pay $210,000 to the Holders of the Class 7 Claims.

(e) Calendar Year 2031. On each of February 28, 2031 and August 31, 2031, the Debtor shall pay $245,000 to the Holders of the Class 7 Claims.

(2) In addition to the payments to Class 7 comprising the Fixed Payment, on each February 28 and August 31 of 2027 through 2031 (each, a "Fixed Payment Date"), the Debtor shall make an additional distribution to the Holders of Class 7 Claims (the "Class 7 Additional Payment"). The Class 7 Additional Payment shall be calculated as of the month ending prior to the payment date. The Class 7 Additional Payment shall be equal to the difference (if positive) between the Debtor's cash on hand and current, collectible accounts receivable (receivables aged 90 days or less) and the total of (a) working capital of $4,979,868.75, (b) the Class 7 Fixed Payment due on the same date, (c) any then-due and payable



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

payments required to be made under the Plan, (d) the balance of the Tax Distribution Reserve as of the relevant Fixed Payment Date; and (e) accounts payable then owed by the Debtor. The Debtor shall provide the details of this calculation to any Holder of a Class 7 Claim that so requests. For purposes of this section, "Tax Distribution Reserve" means, on any given date, an amount equal to the amount of the Debtor's federal income tax liability for the prior year, divided by 365 days, multiplied by the number of days that have elapsed in the current calendar year.

(3) Payment in Event of Sale. If prior to the final Fixed Payment Date, the Debtor sells all or substantially all of its assets, and amounts owing to Classes 1, 2, 3, 4 and 5 are paid in full, the Debtor shall pay any remaining Class 7 Fixed Payment(s), plus an additional $250,000 to Class 7, subject to Pro Rata distribution to Holders of Class 7 Claims.

**b. Class 7 Rejection.** In the event Class 7 rejects the Plan:

(1) The Holder of the Debtor's Interests shall make a cash contribution of $250,000 (the "New Value Contribution") to the Debtor on the Effective Date of the Plan.

(2) Each Holder of a Class 7 Claim shall receive its Pro Rata share of a payment to be calculated in the same manner as the Class 7 Additional Payment (the "Class 7 New Value Excess Cash Payment"), to be made on each February 28 and August 31 of 2027 through 2031. For the avoidance of doubt, if the calculation of the Class 7 New Value Excess Cash Payment does not yield any amount available for distribution, no distribution will be made or required.

**c. Anticipated Recovery Not Known.** Because the amount of General Unsecured Claims that would be included in Class 7 is not yet known, the Debtor cannot provide an estimate of any individual Claimant's recovery under the Plan. However, under the Plan, Class 7 would receive a greater distribution if it accepts the Plan than if it accepts the Plan.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**8. <u>Class 8</u>: Insider DIP Loan.**

**Impaired.** Class 8 consists of the Administrative Claim relating to the Insider DIP Loan (the "Class 8 Claim"). The Class 8 Claim shall receive no payments on account of the Class 8 Claim under the Plan until all payments due under the Plan have been made.

**9. <u>Class 9</u>:** Insider Claims (Exclusive of Insider-DIP Loan).

**Impaired.** Class 9 consists of Allowed Claims of Patrick Turner, Alex Turner and/or Ian Turner, excluding the Class 8 Claim.

> **a. Class 7 Acceptance.** In the event Class 7 accepts the Plan, the Class 9 Claims shall not receive any distribution under the Plan until all payments to Classes 1-7 required by the Plan have been made.
>
> **b. Class 7 Rejection.** In the event Class 7 rejects the Plan, the Class 9 Claims shall be included in Class 7.

**10. <u>Class 10</u>: Equity Interests.**

Antectic shall retain its Equity Interests following Confirmation and shall retain and exercise in its discretion all the privileges and benefits arising from such Equity Interests, but shall receive no distributions on account of such interests, with the exception of distributions necessary to pay the pass-through income tax liability associated with the Debtor's operations, until all payments due to Holders of Claims in Classes 1-7 have been made.

## ARTICLE V.
## MEANS FOR EXECUTION OF THE PLAN

### A. <u>Sources of Funds for Distribution</u>

The Debtor projects that it will fund the distributions under the Plan from (a) the revenue from its ongoing operations, (b) the New Value Contribution, to the extent applicable, and (c) in the case of the payment of Class 1 at the Class 1 Maturity Date, from the refinance of the Class 1 Claim. Distributions may also be funded through capital contributions by the Holder of the Class 10 Equity Interests, provided, however, that the Plan does not require such Holder to make any contributions.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## B. New Value Contribution

Because the Plan does not commit to pay Class 7 in full, to the extent the Class 7 Claim does not accept the Plan, the Class 10 Claimant is prepared to make the New Value Contribution, in the amount of $250,000. The Class 10 Claimant believes that the New Value Contribution is equal to or greater than the current value of the Debtor's business, taking into account its existing obligations. Pursuant to Bankruptcy Code § 1121(c), any party in interest that wishes to file a competing plan may do so provided, however, that such competing plan must comply with the provisions of the Bankruptcy Code including, but not limited to §§ 1123 and 1129.

## C. Continued Corporate Existence and Vesting of Assets in the Debtor

**1. Continued Corporate Existence.** On the Effective Date, the Debtor shall continue to exist in accordance with the laws in the jurisdiction in which it was formed and pursuant to its Operating Agreement in effect as of the Effective Date, except to the extent it is amended pursuant to the terms of the Plan. The Debtor shall continue to employ the same insiders employed as of the Petition Date, and anticipates compensating each as set forth in Exhibit B to this Disclosure Statement.

**2. Vesting of Assets in the Debtor.** Except as otherwise provided in the Plan, on and after the Effective Date, each item of property of the Debtor, including all claims, rights and causes of action and any property acquired by the Debtor shall vest in the Debtor free and clear of all claims, liens, charges, other encumbrances and interests except liens, charges and other encumbrances which the Debtor is required to grant or continue pursuant to Article IV of the Plan. On and after the Effective Date, the Debtor may operate its business and may use, acquire and dispose of property without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or the Confirmation Order.

## D. Cancellation of Indebtedness

On the Effective Date, except for the purpose of evidencing a right to distribution under the Plan, any notes or other instruments or documents evidencing or creating any indebtedness or obligations of, or interest in, the Debtor, except assumed executory contracts, and/or such notes or other instruments evidencing indebtedness or obligations of the Debtor that are unimpaired, reinstated, or amended and restated under the Plan, shall be cancelled and terminated and of no further force or effect.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

### E. Post-Confirmation Professionals' Services

Bush Kornfeld LLP shall continue to serve as the Debtor's counsel and the Debtor shall have authority to pay its Professionals post-confirmation fees and costs without further Court order.

### F. Retention of Claims and Causes of Action

Unless specifically waived in the Plan, all rights, claims and causes of action, whether equitable or legal, of the Debtor against all persons, including but not limited to insiders of the Debtor, are reserved for and assigned to the Debtor, including without limitation all rights, claims and causes of action of the Debtor arising under §§ 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or under applicable non-bankruptcy law, for the recovery of avoidable preferences, fraudulent transfers or other conveyances. The Debtor's obligations and projected performance do not depend on the pursuit of any such claims including any avoidance of the UCC-1 financing statement in favor of Patrick Turner, that has no impact on the distributions contemplated by the Plan. For avoidance of doubt, the Plan shall not be construed as a waiver of any potential claims including, but not limited to, against any potential third parties with respect to any post-petition transfers and/or any potential claims against insiders.

## ARTICLE VI.
## LIQUIDATION ANALYSIS

The Bankruptcy Code requires that a creditor with a right to vote either accept the Plan, or that such creditor receive under the Plan at least as much as it would receive if the Debtor's assets were liquidated in and the proceeds distributed under a Chapter 7 liquidation. This is generally known as the "best interests" test. To apply the test, the Debtor's assets are valued at the dollar amount that would be generated from their distressed liquidation in the context of a Chapter 7 case by a trustee appointed by the Bankruptcy Court.

In a liquidation scenario, it is unlikely that any creditor would be paid more than is proposed to be paid under the Plan.

Secured Claim of Pathward. Pathward asserts a security interest in all of the Debtor's personal property securing an asserted claim of $3,738,064.16. The following analysis uses the Appraised Equipment Value. As of the Petition Date, excluding the unknown patent values and unknown value of potential claims against Spokane Stainless, the Debtor estimates the fair value of its assets in the context of a going concern was $7,821,151 as follows.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

| | |
|---|---|
| Checking account | $39,320.74 |
| Accounts receivable < 90 Days | $2,766,915.00 |
| Accounts receivable >90 Days | $49,156.15 |
| Inventory – raw materials | $455,696.82 |
| Inventory – work in progress | $491,690.25 |
| Inventory – finished goods | $1,310,822.38 |
| Manufacturing equipment[2] | $2,707,550.00 |
| | $7,821,151.34 |

In the event of a liquidation under chapter 7, these values would dramatically decline.

Accounts receivable would likely suffer from significant collection issues. For purposes of this analysis, the Debtor assigns a 50% value to its accounts receivable in a chapter 7 liquidation, calculated at $1,408,036.

Raw materials inventory, consisting primarily of metal alloys, would likely achieve 75% of a non-distressed value, calculated at $341,773.00.

Work-in-progress inventory, with no one to complete the work, would sharply decline in value by at least 50%, calculated to be $245,845.

Finished goods inventory would likely also command only 50%, calculated to be $655,411.

The Debtor's equipment is well-suited to its existing foundry operations but would be expensive to disassemble and transport. For purposes of the analysis, the Debtor utilizes what it believes to be an extremely optimistic return of 75%, calculated to be $2,030,662.50, then reduced by 10% sales costs, for a resulting liquidation value of $1,827,597.

Office equipment. Used office equipment typically commands a nominal value and the Debtor assigns $50,000 as the maximum that would be realized from these assets.

[2] In 2021, in connection with Antectic's acquisition of the Debtor, JG Appraisal Services, LLC performed an appraisal of the Debtor's machinery and equipment concluding a fair value of $2,707,550 as of November 4, 2021. The Debtor's equipment has not substantially changed since that date.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

The above projected liquidation values total $4,528,662, ensuring that Class 1 would be paid in full. Class 2 would be paid only a portion of what is provided under the Plan, and no other Classes would receive any distribution.

Based upon the above analysis, the Plan meets the best interests of creditors test.

## ARTICLE VII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Plan constitutes a motion by the Debtor to assume the real property lease between the Park, as lessor and the Debtor as lessee (the "Park Lease"), pursuant to Bankruptcy Code § 365(a), with cure to be paid in the following manner as agreed between the Debtor and the Park. The Park shall be allowed a cure claim in the total amount of $988,812, which shall be amortized over 180 months and accrue interest at the rate of 5% per annum. The Debtor shall make monthly payments of $7,819 commencing on the fifth day of the first month following the Effective Date. As of the Effective Date, (1) the termination date of the Park Lease shall be extended through December 31, 2042, with annual escalations thereunder at a rate of 2.5%, and (2) the Debtor and the Park shall and shall be deemed to have mutually released one another from any and all claims arising out of the August 17, 2025, collapse of a structural beam at the leased premises.

The Plan constitutes a motion by the Debtor to reject all other executory contracts and unexpired nonresidential real property leases of the Debtor, not otherwise specifically treated elsewhere under this Plan. The Debtor is not aware of any such contracts or leases. Any claim arising from the rejection of an executory contract or unexpired lease is a Class 7 Claim, to the extent it is an Allowed Claim.

## ARTICLE VIII.
## TAX CONSEQUENCES

The federal income tax consequences of the implementation of the Plan to a Holder of a Claim will depend, among other things, on (a) whether the Holder of the Claim receives consideration in more than one tax year; (b) whether the Holder of the Claim is a resident of the United States; (c) whether all of the consideration by the Holder of the Claim is deemed received by that Holder of the Claim as part of an integrated transaction; (d) whether the Holder of the Claim reports income using the accrual or cash method of accounting; and (e) whether the Holder of the Claim has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

The Debtor anticipates that any tax consequences of the Plan will have no effect on the Debtor's ability to consummate the Plan. The Debtor is a pass-through entity



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

and any tax consequences arising from implementation of the Plan will flow through to its shareholders and will not be payable by the Debtor, with the exception of tax distributions to members, but only to the extent necessary to pay their personal tax obligations as a result of pass-through income of the Debtor.

## ARTICLE IX.
## RISK FACTORS

The projected revenue to be generated by the Debtor and which forms the basis of distributions to Holders of Allowed Claims contemplated under the Plan is necessarily contingent upon the Debtor retaining employees and clients sufficient to generate the revenue required to fund the Plan distributions. There is a risk that this will not happen and, if that were to occur, it would impact the Debtor's ability to make distributions under the Plan.

The Plan is subject to approval by the various classes of creditors entitled to vote under the Bankruptcy Code and to confirmation of the Plan by the Bankruptcy Court. No assurance can be given that the Plan will be accepted by the requisite number and amount of creditors or confirmed by the Court. In that event, due to the costs and uncertainties inherent in a modified plan of reorganization or a conversion and liquidation under Chapter 7, all creditors of the estate face substantial risk that their recovery under such alternative circumstances may be substantially less favorable than their recovery provided for by the Plan.

## ARTICLE X.
## CONFIRMATION OF THE PLAN

### A. Voting Procedures

A ballot to be used for voting your acceptance or rejection of the Debtor's Plan of Reorganization is being mailed to you together with this Disclosure Statement and Plan. Holders of claims should read the instructions carefully, complete, date and sign the ballot, and transmit it in the envelope enclosed. IN ORDER TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE INDICATED ADDRESS NOT LATER THAN 5:00 P.M. ON __________, 2026. FAILURE TO VOTE WILL NOT AFFECT THE TREATMENT TO BE ACCORDED A CLAIM OR INTEREST IF THE PLAN NEVERTHELESS IS CONFIRMED.

If more than one-half in number of claimants voting and at least two-thirds in amount of the allowed claims of such claimants in each class of claims vote to accept the Plan, such classes will be deemed to have accepted the Plan. If at least two-thirds in amount of the shares voted in a class of equity interests are voted to accept the Plan, such Class will be deemed to have accepted the Plan. For purposes of determining



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

whether a class of claims or interests has accepted or rejected the Plan, only the votes of those who have timely returned their ballots will be considered.

## B. Hearing on Confirmation

The hearing on confirmation of the Plan has been set for ___________, 2026, before the Honorable Frederick P. Corbit, United States Bankruptcy Judge, in U.S. Bankruptcy Court in Spokane, Washington. The Bankruptcy Court shall confirm the Plan at that hearing only if certain requirements, as set forth in § 1129 of the Bankruptcy Code, are satisfied.

## C. Feasibility

The Debtor must also establish that confirmation of the Plan is not likely to be followed by the Debtor's liquidation, or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Debtor has prepared the projections of the Reorganized Debtor's future performance and its ability to meet its obligations under the Plan (the "Projections"). The Projections, and the assumptions on which they are based, are attached as Exhibit C to this Disclosure Statement and include projections assuming Class 7 accepts the Plan, and projections assuming Class 7 rejects the Plan. The Projections are based on the assumption that the Plan will be confirmed by the Bankruptcy Court and that the Effective Date of the Plan will be no later than ________, 2026. Based upon the Projections, the Debtor believes that confirmation of the Plan is not likely to be followed by the liquidation or further reorganization of the Debtor. To the extent necessary, the Debtor will present additional evidence at the hearing on Confirmation in support of such a finding.

## D. Treatment of Dissenting Classes of Creditors

The Bankruptcy Code requires the Bankruptcy Court to find that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. Upon such a finding, the Bankruptcy Court may confirm the Plan despite the objections of a dissenting class. The Debtor has requested that the Court confirm the Plan even if creditors holding claims in impaired classes do not accept the Plan.

## E. Effect of Confirmation

Confirmation of the Plan shall operate on the Effective Date as a discharge of the Debtor from all claims and indebtedness that arose before the Effective Date, except for those unclassified claims that the Debtor agrees to pay as a continuing obligation. All such discharged claims and indebtedness shall be satisfied by the cash payment or other consideration provided under the Plan. On the Effective Date, all property of the Debtor's estate shall be free and clear of all claims and interests of creditors, except as otherwise provided in the Plan or the order of the Bankruptcy Court confirming the



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Plan. The Debtor shall be vested with all assets of the Debtor's estate. The provisions of the Plan shall bind the Debtor, and all other parties in interest, including any creditor of the Debtor, whether or not such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

## F. Consequences of the Failure to Confirm the Plan

In the event the Court declines to confirm the Debtor's Plan, whether due to a failure of creditor support or otherwise, a liquidation might ultimately result, either through a revised Plan under Chapter 11 or conversion of this Chapter 11 case to a bankruptcy under Chapter 7 of the Bankruptcy Code in which case creditors may receive a reduced recovery.

RESPECTFULLY SUBMITTED this 16th day of October, 2026.

SPOKANE INDUSTRIES LLC

By /s/ Patrick Turner
Patrick Turner
Its Managing Member



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# EXHIBIT B

CHRISTINE M. TOBIN-PRESSER (WSBA #27628)
THOMAS A. BUFORD (WSBA # 52969)
SHANE E. CREASON (WSBA #63865)
BUSH KORNFELD LLP
601 UNION STREET, SUITE 4630
SEATTLE, WA 98101
Tel: (206) 292-2110
Email: ctobin@bskd.com; tbuford@bskd.com;
screason@bskd.com

HONORABLE FREDERICK P. CORBIT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>SPOKANE INDUSTRIES LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-00116<br><br>DISCLOSURE STATEMENT FOR DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION |

IMPORTANT: THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") CONTAINS INFORMATION RELATED TO THE PROPOSED SECOND AMENDED PLAN OF REORGANIZATION WITH RESPECT TO SPOKANE INDUSTRIES LLC (THE "DEBTOR"):

PLEASE READ THIS DOCUMENT WITH CARE. THIS DOCUMENT SUMMARIZES THE TERMS OF THE DEBTOR'S PROPOSED PLAN OF REORGANIZATION. THE DEBTOR MAY CONTINUE TO NEGOTIATE PAYMENT TERMS WITH ITS CREDITORS, AND THE SPECIFIC TREATMENT OF CLAIMS MAY CHANGE AS A RESULT, BUT THE DEBTOR BELIEVES THAT THE PAYMENT TERMS THAT THE DEBTOR WILL ASK THE COURT TO APPROVE WILL NOT BE LESS FAVORABLE THAN THOSE DESCRIBED HEREIN.

TO ALL PARTIES IN INTEREST:



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

On January 23, 2026 (the "Petition Date"), the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is presently acting as a debtor in possession. The Debtor's reorganization case is pending before the above-captioned court.

This Disclosure Statement is submitted by the Debtor and contains information with respect to the Debtor's proposed First Amended Plan of Reorganization (the "Plan"). Pursuant to § 1125 of the Bankruptcy Code, this Disclosure Statement is being distributed to you along with a copy of the proposed Plan to allow you to make an informed decision in exercising your right to accept or reject the proposed Plan. This Disclosure Statement has been approved by order of the Court pursuant to § 1125 of the Bankruptcy Code as containing information of a kind, and in sufficient detail, as far as is reasonably practicable under the circumstances, that would enable a hypothetical reasonable investor to make an informed judgment about the Plan. In the event of inconsistencies between the Plan and the Disclosure Statement, however, the terms of the Plan shall control. The Court's approval of this Disclosure Statement does not constitute an endorsement of the proposed Plan by the Court.

THE ONLY REPRESENTATIONS THAT ARE AUTHORIZED OR THAT MAY BE MADE CONCERNING THE DEBTOR, THE VALUE OF ASSETS, OR THE PLAN ARE CONTAINED IN THIS DISCLOSURE STATEMENT. ANY FINANCIAL INFORMATION CONTAINED HEREIN OR INCORPORATED BY REFERENCE HAS BEEN PREPARED BY THE DEBTOR'S MANAGEMENT AND IS EFFECTIVE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE READER SHOULD NOT INFER OR ASSUME THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF. FINANCIAL INFORMATION, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, IS NECESSARILY BASED UPON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE BY MANAGEMENT, MAY NOT BE REALIZED AND WILL REMAIN SUBJECT TO INHERENT UNCERTAINTIES. THE FINANCIAL INFORMATION HAS NOT BEEN SUBJECTED TO AN AUDIT AND FOR THAT REASON THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACY. HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY REPRESENTED.

The Plan provides for payment to creditors, primarily from the Debtor's operating income over a period of five years. The Debtor urges you to accept the proposed Plan and to promptly return your completed ballot to enable your vote to be counted.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## ARTICLE I.
## DEFINITIONS

Terms used in this Disclosure Statement not specifically defined herein or in the Bankruptcy Code shall be defined as set forth in the Plan that accompanies this Disclosure Statement. In particular, certain capitalized terms shall have the meanings ascribed for such terms in Section II of the Plan.

## ARTICLE II.
## BACKGROUND INFORMATION

### A. <u>Historical Background and Events Leading to Bankruptcy Filing</u>

Spokane Industries LLC was formed in 1952 and has thereafter operated as a foundry, casting metal by melting it into a liquid and pouring it into molds to create wear parts, primarily for the mining and aggregate industries. Since 1966, the Debtor has operated at Building Nos. 1, 2, and 4 of the Spokane Business and Industrial Park in Spokane Valley. The lessor is Park SPE, LLC (the "Park").

In January 2022, Antectic, Inc. ("Antectic") acquired the Debtor. Antectic, in turn, is owned by Lisa Turner (51%) and Patrick Turner (49%). The Turners are the managers of the Debtor. It was the Turners' intent to expand the Debtor's operations to service the mining industry, particularly after recognizing the increase in global copper demand.

In the last four years, the Debtor has experienced a number of major financial setbacks that have led to the need for this reorganization proceeding. The Debtor's equipment proved to be older and far less reliable than had been represented in Antectic's acquisition. Equipment downtime is debilitating for the Debtor. It can severely limit the Debtor's production and result in defective product and waste. The Debtor struggled to obtain maintenance staff equipped to efficiently target issues and prevent costly downtime.

When the Turners acquired the business in early 2022, the Debtor had a substantial backlog of orders resulting from a combination of Covid-19 stockpiling by customers and the Debtor's inability to operate its equipment at full capacity. In the first quarter of 2022 prices for the two primary alloys used by the Debtor in its production skyrocketed by approximately 25-35%. The backlogged orders were fulfilled at original pricing, notwithstanding that the Debtor's own raw material costs



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

had substantially increased. This decimated the Debtor's working capital, a situation from which it has been unable to recover. As customers adjusted to the post-Covid world, orders decreased as preventative ordering practices were no longer necessary. By the first quarter of 2024, ordering had largely returned to a normal pre-Covid level but the Debtor was unable to operate at maximum efficiency due to both its equipment issues and a difficult labor market.

By the end of the second quarter of 2025, the Debtor's operations were improving but on August 17, 2025, a structural beam in the Debtor's primary operating facility collapsed, resulting in a complete production shutdown for five weeks and a $1.48 million financial loss. As of the Petition Date, the Debtor had received a $450,000 advance on its insurance claim.

In April 2025, the FBI contacted Patrick Turner to advise that it had been investigating the Debtor's human resources manager, Tahnya Schafer. The Debtor's subsequent internal investigation documented for the FBI identified $1.068 million that Shafer had fraudulently obtained from the Debtor from 2023 through 2025 through a variety of means. Ms. Schafer was recently convicted and ordered to pay $1,000,000 in restitution to the Debtor but there is no certainty of payment or collectablity. To the extent the Debtor recovers any funds, they would be used in the Debtor's post-confirmation operations.

Due to its cash crisis, the Debtor had nearly 200 vendors holding unpaid claims. In order to operate profitably and achieve and maintain stable production, the Debtor required both a cash infusion in order to undertake equipment repairs and build up a supply of materials to support increased production, and the ability to repay its vendors over time in an orderly manner. The Debtor filed the Bankruptcy Case to enable it to achieve a targeted production and propose a plan to pay creditors over time.

## B. Post-Petition Activity

1. **Appointment of Committee.** The United States Trustee appointed an Official Unsecured Creditors Committee (the "Committee"), consisting of Jon Neill of OCL Foundry & Abrasive Supply Co., Dan Molitor of Tommer Equipment Company, Inc., and Jesse Larson of Northwest Industrial & Foundry Supply. ECF Nos. 95 and 114.

2. **Employment of Professionals.** On February 25, 2026, the Court entered orders approving the employment of Bush Kornfeld LLP and Turning Pointe, LLC,



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

respectively, as bankruptcy counsel and financial advisors to the Debtor. ECF Nos. 78 and 79. On March 31, 2026, the Court approved the employment of Schwabe, Williamson & Wyatt, P.C. as counsel for the Committee. ECF No. 119. On February 25, 2026, the Court entered an Order Establishing Procedures for Interim Payment of Fees and Costs to Professionals. ECF No. 80.

**3. Bank Accounts.** On January 28, 2026, the Court entered an order authorizing the Debtor to continue using its prepetition bank accounts. ECF No. 27.

**4. Payment of Prepetition Wages.** On January 28, 2026, the Court entered an order authorizing the Debtor to pay outstanding prepetition wages and continue to pay for employee benefits and related expenses in the ordinary course.

**5. Adequate Assurance to Utilities.** On January 28, 2026, the Court entered an order authorizing the Debtor's proposed adequate assurance to utility providers on an interim basis. ECF No. 67. On March 12, 2026, the Court entered an order containing provisions specific to utility provider Avista Corporation as agreed to between the Debtor and Avista. ECF No. 103.

**6. Cash Collateral Usage.** On January 28, 2026, the Court entered an interim order authorizing the Debtor to continue using Pathward's cash collateral and approving adequate protection in favor of Pathward. ECF No. 30. The Debtor and Pathward agreed to a number of subsequent extensions of cash collateral usage, through September 8, 2026 as of the date of this Disclosure Statement. ECF No. 161.

**7. Post-Petition Financing.**

**a. Non-Insider DIP Loan.** On January 28, 2026, the Court entered an order authorizing the Debtor to obtain a post-petition loan in the principal amount of $2,000,000 from William and Christine Martz on an unsecured, administrative priority basis, with interest to accrue at the Federal Judgment Rate (the "Non-Insider DIP Loan"). ECF No. 30.

**b. Insider DIP Loan.** On April 7, 2026, the Court entered an order authorizing the Debtor to borrow up to $1,000,000 from Patrick Turner on an unsecured basis with priority under Bankruptcy Code § 503(b)(1), but subordinate to claims entitled to priority under Bankruptcy Code § 507(a)(2), and with interest to accrue at the Federal Judgment Rate (the "Insider DIP Loan"). ECF No. 122. Mr. Turner funded $800,000 of the $1,000,000 and has additionally provided biweekly capital contributions of $70,000 to fund the payment of post-petition Professional fees and costs.

**8. Claims Bar Date.** The Court set a claims bar date of April 3, 2026 for non-governmental claims and July 22, 2026 for governmental claims. ECF No. 13.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**9. Insider Compensation.** On February 4, 2026, the Debtor filed a Notice of Intent to Compensate Insiders, setting forth the four insiders employed by the Debtor, Patrick Turner, Lisa Turner, Alex Turner and Ian Turner, each of their roles, and the compensation intended to be paid to each by the Debtor. ECF 58.

**10. Lease Assumption/Rejection and Plan Filing Deadlines.** On May 27, 2026, the Court entered an order extending the deadlines for the Debtor to file and confirm a plan of reorganization to August 21, 2026 and October 20, 2026, respectively, and the deadline for the Debtor to assume non-residential real property leases to August 21, 2026. ECF No. 137. Park SPE LLC (the "Park") agreed to entry of an order extending the deadline for the Debtor to assume or reject its real property lease to November 25, 2026. ECF No. 158.

**11. Filing of Initial Disclosure Statement and Plan.** On August 21, 2026 the Debtor filed a Disclosure Statement and Plan of Reorganization, premised on the assumption that it would be able to negotiate agreed treatment of unsecured claims with the Committee, notwithstanding its inability to pay such claims in full. To date, the parties have been unable to agree on terms and, in order to ensure that its Plan complies with Bankruptcy Code § 1129(b)(2)(B)(ii), the Debtor has amended its plan to provide for equity to provide a new value contribution.

## ARTICLE III.
## FINANCIAL INFORMATION

### A. Debtor's Assets

On January 23, 2026, the Debtor filed its schedules of assets and liabilities (the "Schedules") and its Statement of Financial Affairs (ECF 1). Schedules A/B reflect the following assets:

| Asset | Scheduled Value |
|---|---:|
| Checking account | $39,320.74 |
| Accounts receivable < 90 Days | $2,766,915.00 |
| Accounts receivable >90 Days | $49,156.15 |
| Inventory – raw materials | $455,696.82 |
| Inventory – work in progress | $491,690.25 |
| Inventory – finished goods | $1,310,822.38 |



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

| Asset | Scheduled Value |
|---|---|
| Manufacturing equipment and office equipment (tax assessed value)[1] | $4,768,477.00 |
| 8 patents | Unknown |
| Claims against sellers of Debtor's business | Unknown |

## B. Debtor's Liabilities

The following discussion represents the Debtor's current understanding of the prepetition claims asserted against it. The Debtor reserves the right, upon notice, to dispute any of the claims.

### 1. Asserted 503(b)(9) Claims

a. **Fastenal.** Fastenal filed a proof of claim (No. 3) asserting a claim entitled to priority under Bankruptcy Code § 503(b)(9) for goods delivered within 20 days of the Petition Date (a "503(b)(9) Claim") in the amount of $23,363.01, and a general unsecured claim in the amount of $71,599.63.

b. **OCL Foundry & Abrasive Supply.** OCL filed proof of claim (No. 54) asserting a 503(b)(9) claim in the amount of $35,843.34 and a general unsecured claim in the amount of $593,781.69.

### 2. Asserted Secured Claims

#### a. Claims Asserted to be Secured by All Personal Property

(1) **Pathward.** Pathward filed a proof of claim (No. 47) asserting a claim as of the Petition Date in the amount of $3,738,064.16, secured by a lien against the Debtor's personal property pursuant to a UCC-1 financing statement no. 202504456523 filed with the Washington Department of Licensing (the "DOL") on February 13, 2025.

(2) **Spokane Stainless Technologies, Inc. ("Spokane Stainless").** Spokane Stainless filed a proof of claim (No. 55) asserting a claim in the amount of $5,272,653.57 for the unpaid purchase price in connection with the Turners' acquisition of the Debtor, secured by a UCC-1 financing statement no. 202507849667

---

[1] In 2021, in connection with Antectic's acquisition of the Debtor, JG Appraisal Services, LLC performed an appraisal of the Debtor's machinery and equipment concluding a fair value of $2,707,550 as of November 4, 2021. The Debtor's equipment has not substantially changed since that date.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

identifying certain personal property of the Debtor (the "Class 2 Collateral") filed with the DOL on February 13, 2025.

**(3) Patrick Turner.** The Debtor scheduled a claim in favor of Patrick Turner in the amount of $3,119,269 with respect to prepetition amounts loaned to the Debtor. A UCC-1 financing statement, filing no. 202534184076, was filed with the DOL on December 27, 2025 to secure the obligation. While the filing may be avoidable pursuant to Bankruptcy Code § 547(a)~~(a)~~, the underlying claim, if Allowed, would remain a General Unsecured Claim. Because the Plan treats the Claim as a General Unsecured Claim, the Debtor does not intend to take any action with respect to the UCC-1 filing.

### b. Claims Asserted to be Secured by Specific Equipment

**(1) CNC Associates.** The Debtor scheduled a claim in favor of CNC in the amount of $42,677.92. CNC filed a proof of claim (No. 32) asserting a secured claim in the amount of $287,563.42. CNC filed UCC-1 financing statement filing numbers 202412201642 with the DOL on May 1, 2024 identifying a Haas Machining Center as collateral and UCC-1 financing statement no. 202412303278 on May 2, 2024 identifying Haas Vertical Machining Center and a Haas Rotary Table as collateral. The identified collateral in both financing statements is referred to collectively herein as the "CNC Collateral."

**(2) Dell Financial Services, L.L.C. ("DFS").** The Debtor scheduled a claim in favor of DFS in the amount of $49,056.81 representing its calculation of the amount owed to DFS as of the Petition Date pursuant to a prepetition agreement entered into between the parties and as to which DFS filed a UCC-1 financing statement no. 201406984103 with the DOL on March 10, 2014 identifying financed computer-related equipment as its collateral (the "DFS Collateral"). DFS filed a proof of claim (No. 48) asserting a secured claim in the amount of $140,179.82 purportedly representing the remaining obligations of the Debtor.

**(3) Marlin Leasing Corp. ("Marlin").** The Debtor scheduled a claim in favor of Marlin in the amount of $110,432.25 representing its calculation of the amount owing for the Debtor's lease of a 3D printer (the "Marlin Collateral") as of the Petition Date, as to which Marlin filed a UCC-1 financing statement no. 202327243027 with the DOL on September 29, 2023. Marlin filed a proof of claim (No. 11) asserting a total claim of $424,946.25, secured by collateral with an asserted value of $170,450.

### c. Other Asserted Collateral



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**(1) First Insurance Funding ("First Insurance").** First Insurance filed a proof of claim (No. 56) asserting a claim in the amount of $277,642.40, secured by the Debtor's insurance policies and premiums financed by First Insurance.

**3. Asserted Priority Claims**

**a. Washington State Department of Labor & Industries ("Wash L&I").** Wash L&I filed a proof of claim (No. 1) asserting a priority claim in the amount of $224,458.43, and a general unsecured claim in the amount of $25,506.04.

**b. Washington State Department of Revenue ("Wash DOR").** Wash DOR filed a proof of claim (No. 20) asserting a priority claim in the amount of $34,025.85 and a general unsecured claim in the amount of $949.97.

**c. Internal Revenue Service ("IRS").** The IRS filed a proof of claim (No. 22) asserting a priority claim in the amount of $43,603.81 and a general unsecured claim in the amount of $26,707.30.

**d. Spokane County Treasurer ("Treasurer").** The Treasurer filed a proof of claim (No. 27) asserting a priority claim in the amount of $242,193.67.

**4. Non-Priority General Unsecured Claims**

Exhibit A to this Disclosure Statement sets forth each of the general unsecured claims scheduled by the Debtor as well as all proofs of claim filed by claimants asserting general unsecured claims. Exhibit A does not constitute a motion to allow such claims and does not represent an agreement by the Debtor to the claim amounts, as to which the Debtor reserves its right to object.

## C. <u>The Debtor's Equity</u>

Antectic is the 100% member of the Debtor. Patrick Turner (49%) and Lisa Turner (51%) are the shareholders of Antectic.

## ARTICLE IV.
## PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING TREATMENT OF EACH CLASS UNDER THE PLAN



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

The treatment of all Allowed Claims and Allowed Interests shall be as follows:

## A. Classification of Claims

The Plan establishes 9 Classes of Claims and one class of Interests, and certain other Claims are Unclassified Claims pursuant to applicable provisions of the Bankruptcy Code. If the Plan is confirmed by the Court and becomes effective, the class into which each Allowed Claim and Allowed Interest fits will determine the manner in which such claim or interest will be treated. The Classes defined in the proposed Plan are summarized below. Parties in interest are urged to review the Plan carefully, as the Plan will govern the treatment of and payment terms related to each Class.

## B. Unclassified Claims

### a. Administrative Expense Claims

As defined in the Plan, Administrative Expense Claims are Allowed Claims for costs or expenses of the Chapter 11 Case that are allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code. Claims incurred in the ordinary course of the Debtor's business following the Petition Date shall be paid in the ordinary course of business in accordance with the terms and conditions of the relevant agreements governing such obligations from the cash generated from the Debtor's operations. Allowed Priority Claims under Bankruptcy Code § 503(b)(9) and Claims for professional fees and expenses shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim, unless the Holder of such Claim agrees to alternative treatment.

### b. Priority Tax Claims

As defined under the Plan, Priority Tax Claims are Allowed Claims of Taxing Agencies that are entitled to priority in accordance with section 507(a)(8) of the Bankruptcy Code. Priority Tax Claims include the principal portion of the applicable tax and interest accrued thereon through the Effective Date but do not include any penalties. Priority Tax Claims shall be paid in full within 60 months of the Petition Date through monthly payments commencing on the fifth day of the first month following the Effective Date and continuing for the number of months that is equal to 60 minus the number of months that have elapsed from the Petition Date to the Effective Date.

## C. Classified Claims and Interests

### 1. Class 1: Pathward Secured Claim



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**Impaired.** Class 1 consists of the Allowed Secured Claim of Pathward (the "Class 1 Claim"). The Class 1 Claim will be paid as follows:

a. Beginning on the fifth day of the first month following the Effective Date, the Debtor will make monthly principal and interest payments of $51,000 for twelve months. Thereafter, the Debtor will make monthly principal and interest payments of $70,000 for the next twelve months (months 13-24 following the Effective Date). Thereafter, the Debtor will make monthly principal and interest payments of $83,000 for the next twelve months (months 25-36 following the Effective Date).

b. Interest shall accrue on the unpaid portion of the Class 1 Claim at the rate of Prime plus 2% per annum (the "Class 1 Interest Rate").

c. The Debtor shall pay the remaining amount owing on the Class 1 Claim on or before the fifth day of the 36th month following the Effective Date (the "Class 1 Maturity Date").

d. The Holder of the Class 1 Claim shall be secured in the Class 1 Collateral.

**2. Class 2: Spokane Stainless Claim**

**Impaired.** Class 2 consists of the Claim of Spokane Stainless (the "Class 2 Claim"), which shall be treated as follows:

Spokane Stainless shall hold an Allowed Secured Claim in the amount of $6,375,153 (the "Class 2 Full Secured Claim"), subject to the following:

**a. Monthly Payments.** Beginning on the fifth day of the first month following the Effective Date, the Debtor will make monthly payments of $20,000 for twelve months. Thereafter, the Debtor will make monthly payments of $30,000 for the next 12 months (months 13-24 following the Effective Date). Thereafter, the Debtor will make monthly payments of $50,000 for the next 36 months (months 25-60 following the Effective Date). On or before the fifth day of the 61st month following the Effective Date (the "Class 2 Maturity Date"), the Debtor will make a lump sum payment of $400,000. The payments described in this Section IV.C.2.a are collectively referred to as the "Class 2 Discounted Payment." If the Debtor fails to make any of the payments described in this section when due, and if the Debtor further fails to make such payment within 10 days of written notice of the delinquency, Spokane Stainless shall be entitled to enforce its rights under its pre-petition agreements with Spokane



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Industries and/or other applicable law, including enforcing its rights against the Class 2 Collateral, in order to collect the remaining unpaid Class 2 Full Secured Claim.

**b. Collateral.** Spokane Stainless shall retain all rights under its prepetition agreements with the Debtor and will retain its security interest in the Class 2 Collateral to secure payment of the Class 2 Full Secured Claim, provided, however, that if no Plan Period Sale occurs and the Debtor makes the Class 2 Discounted Payment in accordance with the terms of Section IV.C.2.a of the Plan, Spokane Stainless shall release, and be deemed to have released, its security interest in the Class 2 Collateral on the Class 2 Maturity Date. Notwithstanding the foregoing, Spokane Stainless shall take any actions to ensure subordination of its security interest to any lender of the Debtor in connection with satisfaction of the Class 1 Claim, provided, however, that Spokane Stainless shall not be required to subordinate to an amount greater than the amount of the Class 1 Claim.

**c. Satisfaction of Class 2 Claim.** Upon the Debtor's payment in full of the Class 2 Discounted Payment in accordance with Section IV.C.2.a. of the Plan, totaling $2,800,000, and provided that no Plan Period Sale occurs, the unpaid remaining balance of the Class 2 Claim shall be, and shall be deemed, satisfied in full.

**d. Sale of the Company During Plan Period.** If, during the Plan Period, either (i) the Interests in the Reorganized Debtor, or (ii) substantially all of the Reorganized Debtor's assets, are sold or transferred (a "Plan Period Sale"), and after full satisfaction of the Class 1 Claim, the net proceeds of the Plan Period Sale shall be paid to Spokane Stainless and applied first to fully satisfy any unpaid balance of the Class 2 Discounted Payment and then to the remaining amount of the balance of the Class 2 Full Secured Claim, less the Class 2 Discounted Payment.

**e. Mutual Release.** As of the Effective Date, the Debtor, on the one hand, and Spokane Stainless, on the other hand, and each of their respective officers, directors, managers, and equity holders, including, in the case of the Debtor, Antectic, Patrick Turner, and Lisa Turner, shall release, and shall be deemed to have released, one another from any and all claims that existed as of the Effective Date, including the claims held by the Debtor identified in Section III.A of the Disclosure Statement as "claims against the sellers of its business" (the "Class 2 Mutual Release"). Notwithstanding the foregoing, the Class 2 Mutual Release shall not release any party with respect to claims arising from its failure to comply with its obligations under the Plan and shall specifically not be deemed a release of the Debtor's obligations to



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Spokane Stainless as described in Section IV.C.2 of the Plan and/or any claim by Spokane Stainless to enforce its rights with respect to the treatment of its Class 2 Claim as provided in the Plan.

**3. Class 3: CNC Claim.**

**Impaired.** Class 3 consists of the Claim of CNC secured by the CNC Collateral (the "Class 3 Claim"). The Class 3 Claim shall be an Allowed Secured Claim in the amount of $287,563.42. The Debtor shall pay the Class 3 Claim in 60 monthly payments commencing on the fifth day of the first month following the Effective Date and made on or before the fifth of each month thereafter. The first 59 payments shall be in the amount of $4,792.72 and the sixtieth and final payment shall be in the amount of $4,792.94. Upon receipt of the first payment, CNC shall provide any and all access codes necessary for the Debtor's operation of the CNC Collateral.

**4. Class 4: DFS Claim**

**Impaired.** Class 4 consists of the Claim asserted by DFS. DFS shall hold an Allowed Claim in the amount of $140,179.82 (the "Class 4 Claim"). The Class 4 Claim shall continue to be secured by DFS' lien against the DFS Collateral. The Debtor shall pay DFS a total of $56,000 (the "Committed Payment Amount") over the twelve-month period commencing on the fifth day of the first month following the Effective Date. To the extent that the Debtor pays DFS the full Committed Payment Amount by or before the fifth day of the twelfth month following the Effective Date, or such later date to which the Debtor and DFS may agree (the "Class 4 Final Payment Date"), the Class 4 Claim shall be deemed fully satisfied. If (a) the Debtor fails to fully pay the Committed Payment Amount by the Class 4 Final Payment Date, or (b) the Bankruptcy Case is converted or dismissed prior to the Debtor's payment of the Committed Payment Amount, DFS shall be entitled to immediate return of the DFS Collateral, and shall continue to hold a claim for the Committed Payment Amount, less the value of the returned DFS Collateral, and less any payments made by the Debtor prior to such conversion or dismissal.

**5. Class 5: Marlin Claim.**

**Impaired.** Class 5 consists of the Allowed Claim of Marlin (the "Class 5 Claim"). The Debtor shall have a period of six months from the Effective Date to sell the Marlin Collateral and remit the proceeds thereof, net of any costs of sale (the "Net



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Marlin Sale Proceeds"), to Marlin and Marlin shall hold a Class 7 Claim for the difference between the Class 5 Claim and the Net Marlin Sale Proceeds. Alternatively, upon Marlin's written election, which election must be made within 15 days of the Effective Date, the Debtor will make the Marlin Collateral available to Marlin and Marlin shall liquidate the Marlin Collateral and reduce the Class 5 Claim by the Net Marlin Sale Proceeds of such liquidation. In either case, the Class 5 Claim, so reduced, shall be treated as a Class 7 Claim.

**6. Class 6: Non-Insider DIP Loan.**

**Impaired.** Class 6 consists of the Administrative Claim relating to the Non-Insider DIP Loan (the "Class 6 Claim").

**a. Class 7 Acceptance.** In the event Class 7 accepts the Plan, beginning on the fifth day of the first month following the Effective Date, the Holder of the Class 6 Claim shall receive monthly interest-only payments at the Federal Judgment Rate for sixty months, with the outstanding balance of the Class 6 Claim due and payable on the fifth day of the sixty-first month following the Effective Date (the "Class 6 Maturity Date").

**b. Class 7 Rejection.** In the event Class 7 rejects the Plan, beginning on the fifth day of January, 2027, the Holder of the Class 6 Claim shall receive monthly principal and interest payments of $45,600 for 48 months.

**7. Class 7: Allowed Unsecured Claims.**

**Impaired.** Class 7 consists of Allowed General Unsecured Claims (each, a "Class 7 Claim"). Depending upon whether Class 7 accepts or rejects the Plan, Holders of Class 7 Claims shall be treated as follows:

**a. Class 7 Acceptance.** In the event Class 7 accepts the Plan, the treatment of Class 7 shall be as follows:

(1) Each Holder of a Class 7 Claim shall be entitled to its Pro Rata share of $1,500,000 (the "Class 7 Fixed Payment"), which shall be paid as follows:



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

(a) Calendar Year 2027. On each of February 28, 2027 and August 31, 2027, the Debtor shall pay $60,000 to the Holders of the Class 7 Claims.

(b) Calendar Year 2028. On each of February 28, 2028 and August 31, 2028, the Debtor shall pay $100,000 to the Holders of the Class 7 Claims.

(c) Calendar Year 2029. On each of February 28, 2029 and August 31, 2029, the Debtor shall pay $135,000 to the Holders of the Class 7 Claims.

(d) Calendar Year 2030. On each of February 28, 2030 and August 31, 2030, the Debtor shall pay $210,000 to the Holders of the Class 7 Claims.

(e) Calendar Year 2031. On each of February 28, 2031 and August 31, 2031, the Debtor shall pay $245,000 to the Holders of the Class 7 Claims.

(2) In addition to the payments to Class 7 comprising the Fixed Payment, on each February 28 and August 31 of 2027 through 2031 (each, a "Fixed Payment Date"), the Debtor shall make an additional distribution to the Holders of Class 7 Claims (the "Class 7 Additional Payment"). The Class 7 Additional Payment shall be calculated as of the month ending prior to the payment date. The Class 7 Additional Payment shall be equal to the difference (if positive) between the Debtor's cash on hand and current, collectible accounts receivable (receivables aged 90 days or less) and the total of (a) working capital of $4,979,868.75, (b) the Class 7 Fixed Payment due on the same date, (c) any then-due and payable payments required to be made under the Plan, (d) the balance of the Tax Distribution Reserve as of the relevant Fixed Payment Date; and (e) accounts payable then owed by the Debtor. The Debtor shall provide the details of this calculation to any Holder of a Class 7 Claim that so requests. For purposes of this section, "Tax Distribution Reserve" means, on any given date, an amount equal to



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

the amount of the Debtor's federal income tax liability for the prior year, divided by 365 days, multiplied by the number of days that have elapsed in the current calendar year.

(3) Payment in Event of Sale. If prior to the final Fixed Payment Date, the Debtor sells all or substantially all of its assets, and amounts owing to Classes 1, 2, 3, 4 and 5 are paid in full, the Debtor shall pay any remaining Class 7 Fixed Payment(s), plus an additional $250,000 to Class 7, subject to Pro Rata distribution to Holders of Class 7 Claims.

**b. Class 7 Rejection.** In the event Class 7 rejects the Plan:

(1) The Holder of the Debtor's Interests shall make a cash contribution of $250,000 (the "New Value Contribution") to the Debtor on the Effective Date of the Plan.

(2) Each Holder of a Class 7 Claim shall receive its Pro Rata share of a payment to be calculated in the same manner as the Class 7 Additional Payment (the "Class 7 New Value Excess Cash Payment"), to be made on each February 28 and August 31 of 2027 through 2031. For the avoidance of doubt, if the calculation of the Class 7 New Value Excess Cash Payment does not yield any amount available for distribution, no distribution will be made or required.

**c. Anticipated Recovery Not Known.** Because the amount of General Unsecured Claims that would be included in Class 7 is not yet known, the Debtor cannot provide an estimate of any individual Claimant's recovery under the Plan. However, under the Plan, Class 7 would receive a greater distribution if it accepts the Plan than if it accepts the Plan.

**8. Class 8: Insider DIP Loan.**

**Impaired.** Class 8 consists of the Administrative Claim relating to the Insider DIP Loan (the "Class 8 Claim"). The Class 8 Claim shall receive no payments on



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

account of the Class 8 Claim under the Plan until all payments due under the Plan have been made.

**9.** **Class 9**: Insider Claims (Exclusive of Insider-DIP Loan).

**Impaired.** Class 9 consists of Allowed Claims of Patrick Turner, Alex Turner and/or Ian Turner, excluding the Class 8 Claim.

a. **Class 7 Acceptance.** In the event Class 7 accepts the Plan, the Class 9 Claims shall not receive any distribution under the Plan until all payments to Classes 1-7 required by the Plan have been made.

b. **Class 7 Rejection.** In the event Class 7 rejects the Plan, the Class 9 Claims shall be included in Class 7.

**10.** **Class 10: Equity Interests.**

Antectic shall retain its Equity Interests following Confirmation and shall retain and exercise in its discretion all the privileges and benefits arising from such Equity Interests, but shall receive no distributions on account of such interests, with the exception of distributions necessary to pay the pass-through income tax liability associated with the Debtor's operations, until all payments due to Holders of Claims in Classes 1-7 have been made.

## ARTICLE V.
## MEANS FOR EXECUTION OF THE PLAN

### A. Sources of Funds for Distribution

The Debtor projects that it will fund the distributions under the Plan from (a) the revenue from its ongoing operations, (b) the New Value Contribution, to the extent applicable, and (~~b~~c) in the case of the payment of Class 1 at the Class 1 Maturity Date, from the refinance of the Class 1 Claim. Distributions may also be funded through capital contributions by the Holder of the Class 10 Equity Interests, provided, however, that the Plan does not require such Holder to make any contributions.

### B. New Value Contribution

Because the Plan does not commit to pay Class 7 in full, to the extent the Class 7 Claim does not accept the Plan, the Class 10 Claimant is prepared to make the New Value Contribution, in the amount of $250,000. The Class 10 Claimant believes that the



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

New Value Contribution is equal to or greater than the current value of the Debtor's business, taking into account its existing obligations. Pursuant to Bankruptcy Code § 1121(c), any party in interest that wishes to file a competing plan may do so provided, however, that such competing plan must comply with the provisions of the Bankruptcy Code including, but not limited to §§ 1123 and 1129.

## ~~B.~~C. Continued Corporate Existence and Vesting of Assets in the Debtor

**1. Continued Corporate Existence.** On the Effective Date, the Debtor shall continue to exist in accordance with the laws in the jurisdiction in which it was formed and pursuant to its Operating Agreement in effect as of the Effective Date, except to the extent it is amended pursuant to the terms of the Plan. The Debtor shall continue to employ the same insiders employed as of the Petition Date, and anticipates compensating each as set forth in Exhibit B to this Disclosure Statement.

**2. Vesting of Assets in the Debtor.** Except as otherwise provided in the Plan, on and after the Effective Date, each item of property of the Debtor, including all claims, rights and causes of action and any property acquired by the Debtor shall vest in the Debtor free and clear of all claims, liens, charges, other encumbrances and interests except liens, charges and other encumbrances which the Debtor is required to grant or continue pursuant to Article IV of the Plan. On and after the Effective Date, the Debtor may operate its business and may use, acquire and dispose of property without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or the Confirmation Order.

## ~~C.~~D. Cancellation of Indebtedness

On the Effective Date, except for the purpose of evidencing a right to distribution under the Plan, any notes or other instruments or documents evidencing or creating any indebtedness or obligations of, or interest in, the Debtor, except assumed executory contracts, and/or such notes or other instruments evidencing indebtedness or obligations of the Debtor that are unimpaired, reinstated, or amended and restated under the Plan, shall be cancelled and terminated and of no further force or effect.

## ~~D.~~E. Post-Confirmation Professionals' Services

Bush Kornfeld LLP shall continue to serve as the Debtor's counsel and the Debtor shall have authority to pay its Professionals post-confirmation fees and costs without further Court order.

## ~~E.~~F. Retention of Claims and Causes of Action



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Unless specifically waived in the Plan, all rights, claims and causes of action, whether equitable or legal, of the Debtor against all persons, including but not limited to insiders of the Debtor, are reserved for and assigned to the Debtor, including without limitation all rights, claims and causes of action of the Debtor arising under §§ 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or under applicable non-bankruptcy law, for the recovery of avoidable preferences, fraudulent transfers or other conveyances. The Debtor's obligations and projected performance do not depend on the pursuit of any such claims including any avoidance of the UCC-1 financing statement in favor of Patrick Turner, that has no impact on the distributions contemplated by the Plan. For avoidance of doubt, the Plan shall not be construed as a waiver of any potential claims including, but not limited to, against any potential third parties with respect to any post-petition transfers and/or any potential claims against insiders.

## ARTICLE VI.
## LIQUIDATION ANALYSIS

The Bankruptcy Code requires that a creditor with a right to vote either accept the Plan, or that such creditor receive under the Plan at least as much as it would receive if the Debtor's assets were liquidated in and the proceeds distributed under a Chapter 7 liquidation. This is generally known as the "best interests" test. To apply the test, the Debtor's assets are valued at the dollar amount that would be generated from their distressed liquidation in the context of a Chapter 7 case by a trustee appointed by the Bankruptcy Court.

In a liquidation scenario, it is unlikely that any creditor would be paid more than is proposed to be paid under the Plan.

Secured Claim of Pathward. Pathward asserts a security interest in all of the Debtor's personal property securing an asserted claim of $3,738,064.16. The following analysis uses the Appraised Equipment Value. As of the Petition Date, excluding the unknown patent values and unknown value of potential claims against Spokane Stainless, the Debtor estimates the fair value of its assets in the context of a going concern was $7,821,151 as follows.

| | |
|---|---|
| Checking account | $39,320.74 |
| Accounts receivable < 90 Days | $2,766,915.00 |
| Accounts receivable >90 Days | $49,156.15 |
| Inventory – raw materials | $455,696.82 |
| Inventory – work in progress | $491,690.25 |



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

| | |
|---|---|
| Inventory – finished goods | $1,310,822.38 |
| Manufacturing equipment[2] | $2,707,550.00 |
| | $7,821,151.34 |

In the event of a liquidation under chapter 7, these values would dramatically decline.

Accounts receivable would likely suffer from significant collection issues. For purposes of this analysis, the Debtor assigns a 50% value to its accounts receivable in a chapter 7 liquidation, calculated at $1,408,036.

Raw materials inventory, consisting primarily of metal alloys, would likely achieve 75% of a non-distressed value, calculated at $341,773.00.

Work-in-progress inventory, with no one to complete the work, would sharply decline in value by at least 50%, calculated to be $245,845.

Finished goods inventory would likely also command only 50%, calculated to be $655,411.

The Debtor's equipment is well-suited to its existing foundry operations but would be expensive to disassemble and transport. For purposes of the analysis, the Debtor utilizes what it believes to be an extremely optimistic return of 75%, calculated to be $2,030,662.50, then reduced by 10% sales costs, for a resulting liquidation value of $1,827,597.

Office equipment. Used office equipment typically commands a nominal value and the Debtor assigns $50,000 as the maximum that would be realized from these assets.

The above projected liquidation values total $4,528,662, ensuring that Class 1 would be paid in full. Class 2 would be paid only a portion of what is provided under the Plan, and no other Classes would receive any distribution.

Based upon the above analysis, the Plan meets the best interests of creditors test.

## ARTICLE VII.

---

[2] In 2021, in connection with Antectic's acquisition of the Debtor, JG Appraisal Services, LLC performed an appraisal of the Debtor's machinery and equipment concluding a fair value of $2,707,550 as of November 4, 2021. The Debtor's equipment has not substantially changed since that date.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Plan constitutes a motion by the Debtor to assume the real property lease between the Park, as lessor and the Debtor as lessee (the "Park Lease"), pursuant to Bankruptcy Code § 365(a), with cure to be paid in the following manner as agreed between the Debtor and the Park. The Park shall be allowed a cure claim in the total amount of $988,812, which shall be amortized over 180 months and accrue interest at the rate of 5% per annum. The Debtor shall make monthly payments of $7,819 commencing on the fifth day of the first month following the Effective Date. As of the Effective Date, (1) the termination date of the Park Lease shall be extended through December 31, 2042, with annual escalations thereunder at a rate of 2.5%, and (2) the Debtor and the Park shall and shall be deemed to have mutually released one another from any and all claims arising out of the August 17, 2025, collapse of a structural beam at the leased premises.

The Plan constitutes a motion by the Debtor to reject all other executory contracts and unexpired nonresidential real property leases of the Debtor, not otherwise specifically treated elsewhere under this Plan. The Debtor is not aware of any such contracts or leases. Any claim arising from the rejection of an executory contract or unexpired lease is a Class 7 Claim, to the extent it is an Allowed Claim.

## ARTICLE VIII.
## TAX CONSEQUENCES

The federal income tax consequences of the implementation of the Plan to a Holder of a Claim will depend, among other things, on (a) whether the Holder of the Claim receives consideration in more than one tax year; (b) whether the Holder of the Claim is a resident of the United States; (c) whether all of the consideration by the Holder of the Claim is deemed received by that Holder of the Claim as part of an integrated transaction; (d) whether the Holder of the Claim reports income using the accrual or cash method of accounting; and (e) whether the Holder of the Claim has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

The Debtor anticipates that any tax consequences of the Plan will have no effect on the Debtor's ability to consummate the Plan. The Debtor is a pass-through entity and any tax consequences arising from implementation of the Plan will flow through to its shareholders and will not be payable by the Debtor, with the exception of tax distributions to members, but only to the extent necessary to pay their personal tax obligations as a result of pass-through income of the Debtor.

## ARTICLE IX.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## RISK FACTORS

The projected revenue to be generated by the Debtor and which forms the basis of distributions to Holders of Allowed Claims contemplated under the Plan is necessarily contingent upon the Debtor retaining employees and clients sufficient to generate the revenue required to fund the Plan distributions. There is a risk that this will not happen and, if that were to occur, it would impact the Debtor's ability to make distributions under the Plan.

The Plan is subject to approval by the various classes of creditors entitled to vote under the Bankruptcy Code and to confirmation of the Plan by the Bankruptcy Court. No assurance can be given that the Plan will be accepted by the requisite number and amount of creditors or confirmed by the Court. In that event, due to the costs and uncertainties inherent in a modified plan of reorganization or a conversion and liquidation under Chapter 7, all creditors of the estate face substantial risk that their recovery under such alternative circumstances may be substantially less favorable than their recovery provided for by the Plan.

## ARTICLE X.
## CONFIRMATION OF THE PLAN

### A. Voting Procedures

A ballot to be used for voting your acceptance or rejection of the Debtor's Plan of Reorganization is being mailed to you together with this Disclosure Statement and Plan. Holders of claims should read the instructions carefully, complete, date and sign the ballot, and transmit it in the envelope enclosed. IN ORDER TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE INDICATED ADDRESS NOT LATER THAN 5:00 P.M. ON __________, 2026. FAILURE TO VOTE WILL NOT AFFECT THE TREATMENT TO BE ACCORDED A CLAIM OR INTEREST IF THE PLAN NEVERTHELESS IS CONFIRMED.

If more than one-half in number of claimants voting and at least two-thirds in amount of the allowed claims of such claimants in each class of claims vote to accept the Plan, such classes will be deemed to have accepted the Plan. If at least two-thirds in amount of the shares voted in a class of equity interests are voted to accept the Plan, such Class will be deemed to have accepted the Plan. For purposes of determining whether a class of claims or interests has accepted or rejected the Plan, only the votes of those who have timely returned their ballots will be considered.

### B. Hearing on Confirmation

The hearing on confirmation of the Plan has been set for ___________, 2026, before the Honorable Frederick P. Corbit, United States Bankruptcy Judge, in U.S. Bankruptcy Court in Spokane, Washington. The Bankruptcy Court shall confirm the



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Plan at that hearing only if certain requirements, as set forth in § 1129 of the Bankruptcy Code, are satisfied.

## C. **Feasibility**

The Debtor must also establish that confirmation of the Plan is not likely to be followed by the Debtor's liquidation, or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Debtor has prepared the projections of the Reorganized Debtor's future performance and its ability to meet its obligations under the Plan (the "Projections"). The Projections, and the assumptions on which they are based, are attached as Exhibit C to this Disclosure Statement and include projections assuming Class 7 accepts the Plan, and projections assuming Class 7 rejects the Plan. The Projections are based on the assumption that the Plan will be confirmed by the Bankruptcy Court and that the Effective Date of the Plan will be no later than ________, 2026. Based upon the Projections, the Debtor believes that confirmation of the Plan is not likely to be followed by the liquidation or further reorganization of the Debtor. To the extent necessary, the Debtor will present additional evidence at the hearing on Confirmation in support of such a finding.

## D. **Treatment of Dissenting Classes of Creditors**

The Bankruptcy Code requires the Bankruptcy Court to find that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. Upon such a finding, the Bankruptcy Court may confirm the Plan despite the objections of a dissenting class. The Debtor has requested that the Court confirm the Plan even if creditors holding claims in impaired classes do not accept the Plan.

## E. **Effect of Confirmation**

Confirmation of the Plan shall operate on the Effective Date as a discharge of the Debtor from all claims and indebtedness that arose before the Effective Date, except for those unclassified claims that the Debtor agrees to pay as a continuing obligation. All such discharged claims and indebtedness shall be satisfied by the cash payment or other consideration provided under the Plan. On the Effective Date, all property of the Debtor's estate shall be free and clear of all claims and interests of creditors, except as otherwise provided in the Plan or the order of the Bankruptcy Court confirming the Plan. The Debtor shall be vested with all assets of the Debtor's estate. The provisions of the Plan shall bind the Debtor, and all other parties in interest, including any creditor of the Debtor, whether or not such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

## F. **Consequences of the Failure to Confirm the Plan**



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

In the event the Court declines to confirm the Debtor's Plan, whether due to a failure of creditor support or otherwise, a liquidation might ultimately result, either through a revised Plan under Chapter 11 or conversion of this Chapter 11 case to a bankruptcy under Chapter 7 of the Bankruptcy Code in which case creditors may receive a reduced recovery.

RESPECTFULLY SUBMITTED this 16th day of October, 2026.

SPOKANE INDUSTRIES LLC

By /s/ Patrick Turner
Patrick Turner
Its Managing Member



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104